**Lillian B. MAHONEY, Plaintiff,**

**v.**

**NORTHWESTERN BELL TELEPHONE COMPANY, a Corporation, Defendant.**

**Civ. No. 1028–L.**

United States District Court
D. Nebraska.

Sept. 22, 1966.

Reller & McArthur, Lincoln, Neb., for plaintiff.

Flavel A. Wright, of Cline, Williams, Wright, Johnson, Oldfather & Thompson, Lincoln, Neb., for defendant.

MEMORANDUM AND ORDER

ROBINSON, Chief Judge.

This matter comes before the Court on defendant's motion to dismiss the com-

plaint for lack of jurisdiction. [Filing # 4 herein].

The complaint asserts that this Court's jurisdiction over the action is based on diversity of citizenship between plaintiff and defendant. In support of the assertion plaintiff alleges that she is a citizen of the State of Nebraska and that defendant is an Iowa corporation with its principal place of business in a state other than Nebraska. The defendant contends that the requisite diversity is lacking because its principal place of business is located in Nebraska.

Title 28 U.S.C.A. § 1332[c] provides:

"For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business * * *."

The defendant, Northwestern Bell Telephone Company, is engaged in the business of supplying communications services in the states of Iowa, Nebraska, South Dakota, North Dakota, and Minnesota.

The affidavits and answers to interrogatories submitted to this Court for and against the motion to dismiss reveal the following facts concerning the defendant. The corporation's $1,359,147,-587.00 of undepreciated assets are distributed among the five states in the following manner: Minnesota—$569,787,-293.00; Iowa—$384,295,942.00; Nebraska—$194,966,300.00; South Dakota—$115,265,078.00; North Dakota—$94,-832,974.00. The Corporation's $407,848,-603.00 gross income for the year ending December 31, 1965 came from: Minnesota—$171,853,592.00; Iowa—$118,971,114.00; Nebraska—$55,660,-051.00; South Dakota—$32,873,802.00; and North Dakota—$28,490,044.00. The defendant had a net profit for the same year of $75,520,871.00. Of this amount $31,570,424.00 was derived from operations in Minnesota, $22,114,541.00, from Iowa, $10,810,902.00, from Nebraska, $5,-708,425.00, from South Dakota, and $5,-316,579.00 from North Dakota. Similar proportions exist among the five states as to the number of telephone service units, telephone operators, total miles of telephone wires, motor vehicles, and total employees. In each case both Minnesota and Iowa have a significantly greater portion of the corporation's total than does Nebraska, and in the same respect Nebraska has a greater portion than North and South Dakota. Each of the five states has regional offices from which operations in that state are directed. Although the day to day business of the company is handled by the regional offices, the Omaha office directs the methods, procedures, and standards of operation in detailed "Practices". These "Practices" originate at the Omaha office and provide the regional offices with rules for the day to day operations of the business. All major policy decisions are made in Omaha, Nebraska, at the general headquarters of the defendant with the exception of when the Board of Directors of the corporation meet in some other state. The offices of the President, Vice President-Operations, Secretary and Treasurer Vice President and Comptroller, and six other Vice Presidents are located in Omaha. These officers direct, supervise, or control: the company advertising program, the corporate records, union negotiations and contracts, contracts with the armed services, agreements with the Federal Communications Commission, contracts with other telephone systems, company practices and procedures, budgets for company expenditure, and all legal matters involving the company as a whole. The Board of Directors have met in all five of the states in which the company does business during the past five years, but the meetings are generally held in either Minnesota or Nebraska. Upon these facts it must be determined whether Nebraska is the principal place of business of the defendant, Northwestern Bell Telephone Company.

There appears to be a division among the various Circuits as to the correct standard upon which the determination

should be made. This division is centered on the relative weights which should be accorded the various facts concerning the structure and operations of the company. The "nerve center" theory would place emphasis on the location of the headquarters of the company. The "center of corporate activity" test would favor the state where the company had the greatest contract with the public, i. e. had the largest number of employees, the greatest amount of assets, and derived the most income. It is the opinion of this Court, however, that the split of authority is largely linguistic. Even the cases which have taken the "operating assets" approach have not ignored the location of the executive offices and of management activity. Gilardi v. Atchison, Topeka and Sante Fe Railway Co., 189 F. Supp. 82 [N.D.Ill.1960]; Huggins v. Winn-Dixie Greenville, Inc., 233 F.Supp. 667 [E.D.S.C.1964]; Kelly v. United States Steel Corporation, 284 F.2d 850 [3rd Cir. 1960]. Conversely, those cases which recognize the "nerve center" test have not done so without considering the location of the company's operations. In fact, all of the cases which have come to the attention of this Court agree that the determination must be based on the facts of each individual case. The "nerve center" approach would create a fictional principal place of business where a company's executive offices are located in one state and all of its business is transacted in another. Bullock v. Wiebe Construction Co., 241 F.Supp. 961 [S.D.Iowa 1965]. In the same respect the "operating assets" test would not be adequate where a company's business is dispersed relatively equally among several states. In such a case the location of the executive offices assumes a greater importance. Anderson v. Southern Bell Telephone and Telegraph Co., 209 F.Supp. 921 [M.D.Ga.1962], Egan v. American Airlines, Inc., 324 F.2d 565 [2nd Cir. 1963], Scot Typewriter Co. v. Underwood Corp., 170 F.Supp. 862 [S.D.N.Y.1959], Textron Electronics, Inc. v. Unholtz-Dickie Corporation, 193 F.Supp. 456 [D. Conn.1961].

Northwestern Bell Telephone Company does a substantial amount of business in all five states in which it has operations; no one state supplies a majority. The "nerve center" of the business is clearly Omaha, Nebraska. Plaintiff argues that the defendant is not engaged in a wide-spread type of business which the "nerve center" test contemplates. We do not believe that the value of the concept is limited to operations involving a prescribed number of states. Where no one state is clearly the center of corporate activity, or accounts for a majority of the company income, the head-quarters logically assumes greater importance in the determination. This is especially true where the activities conducted by the company are necessarily uniform and extensive co-ordination of operations is imperative. These considerations indicate that Nebraska is the principal place of business of the defendant, Northwestern Bell Telephone Company. As such, diversity is lacking, and this Court does not have jurisdiction over the action. Accordingly,

It is ordered that defendant's motion to dismiss for lack of jurisdiction should be and is hereby sustained.