692 F.Supp. 1070 (1988)
ASSOCIATED PETROLEUM PRODUCERS, INC., et al., Plaintiffs,
v.
TRECO 3 RIVERS ENERGY CORPORATION, et al., Defendants.
No. 85-2246C(6).
United States District Court, E.D. Missouri, E.D.
August 19, 1988.
*1071 George S. Hecker, Bruce C. Oetter, Leo J. Asaro, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Wheeler, Coleman, Justice, Handmaker, Tranex Corp., Tranex Dev., Tranex Lease, Mid-East Energy, East Kentucky Oil and Drew Drilling.
Warren W. Davis, Davis & Davis, Richard D. Lageson, Michael Bakewell, St. Louis, Mo., for plaintiffs.
Randall J. Thompson, St. Louis, Mo., pro se.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on various motions filed by the parties.
In their first amended complaint, Associated Petroleum Producers, Inc. ("APP") and various entities affiliated with APP assert claims against defendants under the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and state law. Plaintiffs essentially allege that defendants, individually and in concert with each other, deprived them of their rights, property and business expectancies, including oil and gas leases, drilling permits, contractual relationships and interest in a pipeline and natural gas transportation system. Jurisdiction of this Court is invoked under both the federal question and the diversity of citizenship provisions of 28 U.S.C. §§ 1331 and 1332.
Insofar as it is pertinent here the allegations giving rise to plaintiffs' first amended complaint are as follows. APP is engaged in oil and gas exploration, production and transportation, owns leasehold interests for natural gas production and provides management services to affiliated entities engaged in natural gas exploration, production and transportation. Defendant Treco 3 Rivers Energy Corp. ("Treco"), a shareholder in APP, is controlled by defendant Randall Thompson ("Thompson"), who is a former officer and agent of APP. Defendant Virgil Wheeler ("Wheeler") was retained by APP to prepare financing proposals for a project APP was developing and as such represented himself to be an officer and agent of APP.
Treco, Thompson and Wheeler breached fiduciary and contractual obligations owed to plaintiffs by secretly competing against plaintiffs and by appropriating documents and opportunities of APP and delivering these documents and opportunities to defendant Burlin Coleman ("Coleman"), chairman and president of the National Bank of Pikeville, and defendant Paul Justice ("Justice"), president of corporate defendants East Kentucky Oil & Gas Co. ("EKOG"), Mideast Energy, Inc., Drew Drilling and Tranex Development Corp. and Tranex Lease Co. (collectively "Tranex"). In return, Treco, Thompson and Wheeler received pecuniary benefits. The principal object of defendants' actions was to misappropriate an 8-inch natural gas transportation system originating in Clay County, Kentucky, which APP was in the process of developing. In addition, and as a natural outgrowth of these actions, defendants also conspired to take APP's leasehold interests and natural gas production and to *1072 prevent APP from discovering their plan and the participants therein. The scheme was abetted by the advice and financing of Justice, Coleman and defendant Stuart Handmaker ("Handmaker"), their longtime friend and legal counsel.[1]
Presently before the Court are defendants Coleman, Justice, Tranex, EKOG, Mideast Energy, Inc., Drew Drilling and Handmaker's motion to dismiss Count XVI (RICO) of plaintiffs' first amended complaint for failure to state a claim, motion to dismiss for lack of subject matter jurisdiction, motion to dismiss for lack of personal jurisdiction and improper venue or in the alternative to transfer, and motion to strike and plaintiffs' motion for sanctions under Rule 11 and Rule 26(g). For the following reasons, the Court grants defendants' motions to dismiss Count XVI and to dismiss for lack of subject matter jurisdiction and denies plaintiffs' motion for sanctions. The Court dismisses defendants' remaining motions as moot.

A. Motion to Dismiss Count XVI (RICO)

In support of their motion to dismiss, defendants contend that plaintiffs have failed to sufficiently plead all of the elements necessary to state a private cause of action under RICO, 18 U.S.C. § 1961, et seq. The Court agrees. Defendants' alleged conduct, even if proven, would not constitute a "pattern of racketeering activity" as that term has been construed by the United States Supreme Court and the Eighth Circuit Court of Appeals and accordingly fails to state a claim under RICO.
In considering defendants' motion to dismiss, the Court notes that it is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, a complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 101-102.
In order to state a claim under 18 U.S.C. § 1962(c), the section upon which plaintiffs rely in asserting their RICO claim, they must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The "pattern" element requires plaintiffs to allege "more than one `racketeering activity' and the threat of continuing activity...." Superior Oil Co. v. Fulmer, 785 F.2d 252, 257 (8th Cir.1986). Indeed, it requires them to allege prohibited conduct which is characterized by "continuity plus relationship." Superior Oil, 785 F.2d at 257 (citing Sedima, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14).
In applying the two-prong requirement of the "pattern" element, the Eighth Circuit Court of Appeals has consistently held that proof of multiple predicate acts, absent more, is insufficient to constitute a "pattern" of racketeering activity. In Superior Oil, for example, the Court held that, while plaintiff had satisfied the "relationship" prong by proving multiple acts of wire fraud on the part of the defendants in pursuit of their scheme to convert gas from plaintiff's interstate pipeline, it failed to satisfy the "continuity" prong as it failed to prove the continuity sufficient to form a "pattern" of racketeering activity. "The actions of [defendants] comprise one ... scheme.... There was no proof that [defendants] had ever done these activities in the past and there was no proof that they were engaged in other criminal activities elsewhere." Superior Oil, 785 F.2d at 257. As the Court reasoned, "[i]t places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a `pattern of racketeering activity.'" Superior Oil, 785 F.2d at 257. See also Allright Missouri, Inc. v. Billeter, 829 F.2d 631 (8th Cir.1987) *1073 (allegation of multiple acts of wire and mail fraud undertaken for the purpose of effecting a transfer of real estate from one limited partnership to another did not constitute a "pattern" of racketeering activity); Ornest v. Delaware North Companies, Inc., 818 F.2d 651 (8th Cir.1987) (single scheme over eight years to defraud plaintiffs of their share of vending sales did not constitute a "pattern" of racketeering activity); Madden v. Gluck, 815 F.2d 1163 (8th Cir.), cert. denied, ___ U.S. ___, 108 S.Ct. 86, 98 L.Ed.2d 48 (1987) (check kiting scheme to keep business afloat in order to loot it did not constitute a "pattern" of racketeering activity); Deviries v. Prudential-Bache Securities, Inc., 805 F.2d 326 (8th Cir.1986) (single scheme over six years to generate excessive sales commissions by recommending unsuitable investments and churning plaintiff's account did not constitute a "pattern" of racketeering activity).
It is clear that in the case at hand plaintiffs have failed to adequately allege a "pattern" of racketeering activity. In their first amended complaint, plaintiffs allege that defendants engaged in a scheme which was "designed to and did deprive plaintiffs of their property, rights and business expectancies, including leasehold interests, drilling permits, contractual relationships and interests in an 8-inch pipeline and natural gas transportation system originating in Clay County, Kentucky." First Amended Complaint, ¶ 20. Plaintiffs further allege that the purpose of this scheme was "to use APP's assets, properties, interests, business opportunities, business relationships, information, and materials for their own personal benefit and gain." First Amended Complaint, ¶ 207. Although plaintiffs have alleged that defendants engaged in multiple fraudulent acts these acts constitute subdivisions of a single scheme: to appropriate plaintiffs' oil and gas opportunities in the State of Kentucky. There are no allegations that defendants have done these activities in the past or that they were engaged in similar activities elsewhere. Accordingly, the Court grants defendants' motion to dismiss Count XVI of plaintiffs' first amended complaint.

B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In their motion to dismiss for lack of subject matter jurisdiction, defendants contend that plaintiffs' sole basis for invoking the Court's jurisdiction is under the diversity of citizenship provisions of 28 U.S.C. § 1332 and that, as APP is a citizen of the State of Kentucky and as defendants are also citizens of that state, the Court cannot exercise jurisdiction over plaintiffs' claims as there is no complete diversity between the parties.[2] In essence, defendants request the Court to reconsider its Order and Memorandum of December 18, 1985 which held that APP is a citizen of the State of Missouri as it found that its "nerve center" is in Missouri. Based on the information contained in the recently filed affidavits of Thurman G. Harrawood ("Harrawood"), president of APP, and in the recently submitted federal tax returns of APP for the 1985 and 1986 tax years, the Court finds that APP is indeed a citizen of the State of Kentucky and accordingly grants defendants' motion.[3]
Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, a district court is required to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter...." Subject matter jurisdiction is determined as of the date the action is filed. Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957). Moreover, when a party to an action challenges federal jurisdictional allegations, they must be proved, Roberts v. Lewis, 144 *1074 U.S. 653, 12 S.Ct. 781, 36 L.Ed. 579 (1892), and the burden of proof falls on the party invoking federal jurisdiction. McNutt v. General Motors Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The Court, having reviewed the record now before it, has no hesitation in concluding that plaintiffs have failed to meet their burden of demonstrating that APP was a citizen of the State of Missouri either at the time of filing their original complaint in September of 1985 or at the time of filing their first amended complaint in December of 1986.
For purposes of diversity jurisdiction, a corporation is deemed to be a citizen not only in its state of incorporation but also in the state where it has its principal place of business. 28 U.S.C. § 1332(c). In determining a corporation's principal place of business, the courts have employed a variety of analyses. Some courts have employed the "nerve center" test which focuses upon the decision-making function of the corporation. See, e.g., Scot Typewriter v. Underwood Corp., 170 F.Supp. 862 (S.D.N. Y.1959). Other courts have employed the "place of operations" test which focuses upon the situs of the corporation's tangible assets. See, e.g., Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F.Supp. 490 (S.D.N.Y.1963). Still other courts have employed the "total activities" test which incorporates both the "nerve center" and "place of operations" tests in an endeavor to determine where the bulk of the corporation's most significant activity occurs. See, e.g., Vareka Investments, N.V. v. American Investment Properties, Inc., 724 F.2d 907 (11th Cir.), cert. denied, 469 U.S. 826, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984).
Although the Eighth Circuit Court of Appeals has yet to directly address the issue, the courts within the circuit have found that the issue of a corporation's principal place of business should be determined on the basis of each individual case and at least suggest that the most appropriate test to employ is the "total activities" test. See Mahoney v. Northwestern Bell Telephone Co., 258 F.Supp. 500 (D.Neb.1966), aff'd, 377 F.2d 549 (8th Cir. 1967) (noting that the split of authority as to which test to employ is largely linguistic as cases employing either test generally consider all of the facts pertaining to a corporation's principal place of business). Accord In re Lakeside Utilities, 18 B.R. 115, 116-17 (Bankr.D.Neb.1982). Perhaps most important these cases provide the Court with useful guidance in determining how to weigh the competing factors with regard to both the "nerve center" and "place of operations" tests. Thus, when no one state is clearly the center of corporate activity, or accounts for the majority of the corporation's income, the headquarters and location of the corporate policy-making functions assume greater importance. See Mahoney, supra (where corporation's headquarters and policy-making functions were in Nebraska, and where no one state accounted for the majority of the corporation's income, Nebraska was the corporation's principal place of business). However, when virtually all of the corporate business is conducted in one state, but the headquarters and corporate policy-making functions are conducted in another, the situs of the corporate business assumes greater importance. See Hanna Mining Co. v. Minnesota Power & Light Co., 573 F.Supp. 1395 (D.Minn.1983), aff'd, 739 F.2d 1368 (8th Cir.1984) (where corporation conducted all of its business in Minnesota, and where its executive and administrative offices were located in Ohio, Minnesota was the corporation's principal place of business).
Viewing the "total activity" of APP, as it now appears from the affidavits of Harrawood dated April 17, 1987 and September 1, 1987[4] and from APP's federal tax returns for the 1985 and 1986 tax years, the Court finds the pertinent facts to *1075 be as follows. APP is incorporated in the State of Missouri. Its sole officers and employees, a president and a secretary, reside in Missouri and conduct business in its offices at Valley Park, Missouri. Its shareholder meetings are held in St. Louis County, Missouri, its corporate decisions are made in Missouri, and its business contracts are executed in Missouri. APP has 2,000 acres of leasehold properties and 16 gas wells in Kentucky producing 1.2 million cubic feet of natural gas per month. The only other state where it produces natural gas is Tennessee.[5] It holds no leasehold interests and produces no natural gas in Missouri. According to its 1985 federal tax returns, APP had total sales in 1985 of $981,344, more than ninety-two percent from Kentucky sales. According to its 1986 federal tax returns, APP had total sales in 1986 of $312,678, all of which was from Kentucky sales. During these years, APP did not provide any compensation to its officers and employees.
Based on the foregoing, it is clear that in both 1985 and 1986 APP's principal place of business was in the State of Kentucky, where it conducted virtually all of its business, and not in the State of Missouri, where its headquarters and policymaking functions are located. Although it is true that APP conducted its day-to-day operations from Missouri, the bulk of its most significant activity occurred in Kentucky. Accordingly, and as there is no complete diversity between the parties, the Court concludes that it is without jurisdiction to consider plaintiffs' claims.

C. Motion for Sanctions Under Rule 11 and Rule 26(g)

In plaintiffs' motion for sanctions, plaintiffs contend that Thompson and his then attorney (now defendant) Handmaker failed to produce and/or destroyed numerous documents in their possession, custody or control which were requested in plaintiffs' document requests and failed to provide key information which was responsive to their interrogatory questions.[6] In his response, Thompson implicitly acknowledges that he wilfully failed to comply with plaintiffs' discovery requests, but contends that plaintiffs' sole remedy is under Rule 37 of the Federal Rules of Civil Procedure. Handmaker, by contrast, notes that the bulk of plaintiffs' allegations stem from a confession Thompson made, outside the presence and without the consent of his attorneys, in the office of plaintiffs' attorneys and that his confession directly contradicts his prior deposition testimony. Moreover, he notes that Harrawood and Thompson, as disclosed by the transcripts of some thirty-two telephone conversations, were themselves engaged in a conspiracy to add Handmaker, Coleman, Justice and the corporations he controls as defendants. The purpose of the conspiracy was to secure from these new "deep pocket" defendants a quick settlement for their mutual benefit and gain. As a consequence, Handmaker also seeks to recover his costs in responding to plaintiffs' motion.
After a careful review of the record, the Court finds that the misconduct of plaintiffs, plaintiffs' attorneys, Thompson and Handmaker is so pervasive as to constitute an abuse of the judicial process and accordingly declines to award monetary sanctions for the benefit of any party. Moreover, and as a result of this Court's decision to dismiss this action for lack of subject matter jurisdiction, it finds that it would be pointless to impose any other sanction authorized under Rule 11 or Rule 26(g) of the Federal Rules of Civil Procedure. Nevertheless, based on the credible evidence, the Court finds that both Thompson and Handmaker failed to provide discovery responses that they knew or reasonably should have known were required under the federal rules. Furthermore, the Court finds that Harrawood and Thompson, with the *1076 apparent knowledge and cooperation of plaintiffs' attorneys, colluded with one another by exchanging the parties' respective strategems and evidence in an effort to mislead and manipulate this Court and to add new defendants to this action.
The Court declines to further rehearse the arguments and evidence contained in the hundreds of pages of memoranda and accompanying exhibits filed in conjunction with plaintiffs' motion. In declining to do so, the Court is not seeking to minimize the gravity with which it regards the parties' misconduct. The concealment and/or destruction of evidence has no place in a court of law. The collusion between opposing parties which occurred here is repugnant to our judicial system.[7]

ORDER
Pursuant to the memorandum filed herein on this date,
IT IS HEREBY ORDERED that defendants' motion to dismiss Count XVI of plaintiffs' first amended complaint be and it is granted.
IT IS FURTHER ORDERED that defendants' motion to dismiss for lack of subject matter jurisdiction be and it is granted.
IT IS FURTHER ORDERED that plaintiffs' motion for sanctions under Rule 11 and Rule 26(g) of the Federal Rules of Civil Procedure be and it is denied.
IT IS FURTHER ORDERED that defendants' motion to dismiss for lack of personal jurisdiction and improper venue or in the alternative to transfer be and it is denied as moot.
IT IS FURTHER ORDERED that defendants' motion to strike be and it is denied as moot.
NOTES
[1] Handmaker was initially one of the counsel of record in this action for Treco, Thompson and Wheeler. However, when he was added as a defendant in plaintiffs' first amended complaint, the Court granted him leave to withdraw.
[2] As the Court has dismissed Count XVI (RICO) of plaintiffs' first amended complaint, it is clear that plaintiffs can no longer invoke the Court's jurisdiction under the federal question provisions of 28 U.S.C. § 1331.
[3] Alternatively, defendants contend that Treco and Thompson should be realligned as plaintiffs to reflect their true interests in this action and that their realignment would destroy any basis for diversity jurisdiction. Given its finding that APP is a citizen of the State of Kentucky, the Court finds it unnecessary to reach the merits of defendants' contention.
[4] The affidavit of Harrawood dated April 16, 1987 was submitted to the United States District Court for the Eastern District of Kentucky in connection with a case styled Mendal Day v. Associated Petroleum Products, Inc., No. 87-32. In an opinion dated May 22, 1987, [available on WESTLAW, 1987 WL 48394] the Mendal Court held that APP's principal place of business was in the State of Kentucky. The Court notes that it is not bound by the decision in Mendal and has independently reviewed the facts in reaching its result here.
[5] APP also asserts that it owns leasehold interests in Illinois. However, it has never been licensed to transact business in Illinois. Nor has it ever been licensed to transact business in Tennessee.
[6] In their motion, plaintiffs also sought sanctions against Thompson's local attorneys, Robert Guest and James Owen. However, on May 14, 1987, plaintiffs dismissed their motion against Guest and Owen "without prejudice."
[7] Notwithstanding the foregoing, the Court commends the law firm of Bryan, Cave, McPheeters & McRoberts in its representation of Wheeler, Coleman, Handmaker, Justice and the corporations he controls. In its fine legal memoranda, it clarified and brought to light the issues before the Court. Its conduct throughout these proceedings has been exemplary and in the best tradition of professional responsibility.