851 F.Supp. 1430 (1994)
FEDERAL BEEF PROCESSORS, INC., Plaintiff,
v.
CBS INC.; CBS News Division, a division of CBS Inc.; 48 Hours; and Leendelle McClean, Defendants.
Civ. No. 94-5009.
United States District Court, D. South Dakota, Western Division.
May 3, 1994.
*1431 Ronald W. Banks, Banks, Johnson & Colbath, Rapid City, SD, for plaintiff.
Steven J. Helmers and Craig A. Pfeifle, Lynn Jackson Shultz & Lebrun, Rapid City, SD, for defendants.

*1432 MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND AND GRANTING SUMMARY JUDGMENT
BATTEY, District Judge.

PROCEDURAL HISTORY
Before the Court are two motions which involve interrelated issues. Defendants CBS Inc. (CBS) and Leendelle McClean (McClean) have filed a joint motion for partial summary judgment alleging that McClean is entitled to summary judgment on the claims plaintiff Federal Beef Processors, Inc. (Federal) has asserted against McClean. Also pending is Federal's motion to remand this action to state court. Both motions require this Court to determine whether it has subject matter jurisdiction over this action.

FACTS
In December 1993, CBS, with the assistance of an employee of Federal, acquired a videotape of meat processing operations at Federal's beef slaughter plant in Rapid City, South Dakota. CBS intended to broadcast the videotape on its "48 Hours" program on February 9, 1994. On January 20, 1994, Federal initiated this action in South Dakota state court against CBS and McClean.
Federal's first amended complaint asserts the following claims: (1) breach of the duty of loyalty owed by an employee and aiding and abetting such a breach; (2) trespass; (3) violation of the Uniform Trade Secret Act as adopted by South Dakota; (4) invasion of privacy; (5) civil conspiracy to commit trespass, to invade privacy, and to breach a duty of loyalty; (6) willful deceit; and (7) commercial bribery. Federal seeks relief in the form of a temporary restraining order and a permanent injunction prohibiting CBS from broadcasting the videotape and requiring CBS to turn the tape and any copies over to Federal. Federal also seeks damages, costs, and attorneys' fees.
On February 7, 1994, the state trial court issued a preliminary injunction ordering CBS not to broadcast the videotape until the merits of Federal's claims were determined. CBS appealed to the South Dakota Supreme Court. The South Dakota Supreme Court agreed to hear the appeal and set the matter for hearing in March. The South Dakota Supreme Court, however, refused to grant an emergency stay of the trial court's order. CBS then petitioned United States Supreme Court Justice Harry A. Blackmun for an emergency stay. Finding that the state court's order was a prior restraint in violation of the first amendment to the United States Constitution, Justice Blackmun granted the emergency stay on February 9, 1994. CBS thereafter broadcast the video recording as planned.
On February 18, 1994, CBS and McClean removed the action to this Court. The defendants allege that this Court has subject matter jurisdiction over this action because the adverse parties are residents of different states and the amount in controversy exceeds $50,000. See 28 U.S.C. § 1332.
The two motions currently pending are CBS and McClean's motion for summary judgment and Federal's motion to remand. The resolution of these motions involves the following issues:
1. whether Federal's principal place of business is located in South Dakota and
2. whether Federal has any possibility of recovering against McClean.

DISCUSSION

A. Federal's Principal Place of Business
Defendants removed this action invoking the Court's "diversity jurisdiction." Diversity jurisdiction exists if the adverse parties are all residents of different states and the amount in controversy exceeds $50,000. See 28 U.S.C. § 1332. For diversity jurisdiction to exist, no defendant can be a resident of the state in which the plaintiff resides.
Here, it is undisputed that defendant McClean is a resident of South Dakota and defendant CBS is a resident of New York. Therefore, this Court lacks jurisdiction if Federal is a resident of either New York or South Dakota. Federal alleges it is a resident of South Dakota.
While individuals can be residents of but a single state at any one time, corporations like Federal are citizens of both the state of incorporation and the state where *1433 the corporation's principal place of business is located. Blakemore v. Missouri Pac. R.R., 789 F.2d 616, 618 (8th Cir.1986); 28 U.S.C. § 1332(c)(1). Although Federal initially contended that it was incorporated under the laws of South Dakota, it has since conceded that Federal's place of incorporation is Minnesota. Therefore, if Federal is to be considered a resident of South Dakota, it must be because Federal's principal place of business is located in South Dakota.
The determination of a corporation's principal place of business is a mixed question of law and fact, but mainly one of fact. Blakemore, 789 F.2d at 618; North Star Hotels Corp. v. Mid-City Hotel Assocs., 696 F.Supp. 1265, 1269 (D.Minn.1988). The party invoking federal jurisdiction bears the burden of establishing the existence of diverse citizenship among adverse parties. Blakemore, 789 F.2d at 618; North Star Hotels Corp., 696 F.Supp. at 1269.
The federal courts have developed three different tests to determine a corporation's principal place of business. The "nerve center" test locates the principal place of business in the state from which a corporation's decision-making authority and over-all control emanate. White v. Halstead Indus., Inc., 750 F.Supp. 395, 397 (E.D.Ark. 1990); North Star Hotels Corp., 696 F.Supp. at 1269-70; Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp., 692 F.Supp. 1070, 1074 (E.D.Mo.1988); and Mahoney v. Northwestern Bell Tel. Co., 258 F.Supp. 500, 502 (D.Neb.1966), aff'd per curiam, 377 F.2d 549 (8th Cir.1967). The "corporate activities" test locates the corporation's principal place of business in the state where the substantial majority of a corporation's production or service activities occur. White, 750 F.Supp. at 397; North Star Hotels Corp., 696 F.Supp. at 1269-70; Associated Petroleum Producers, Inc., 692 F.Supp. at 1074; and Mahoney, 258 F.Supp. at 502.
Finally, some courts have employed a "total activities" test under which all of a corporation's activities are considered. White, 750 F.Supp. at 397; North Star Hotels Corp., 696 F.Supp. at 1269-70; Associated Petroleum Producers, Inc., 692 F.Supp. at 1074; and Mahoney, 258 F.Supp. at 502. Under the total activities test, if a corporation has its nerve center in one state and its production occurs in only a single other state, the latter state assumes greater importance in determining where the corporation's principal place of business is located. White, 750 F.Supp. at 397; North Star Hotels Corp., 696 F.Supp. at 1270; Associated Petroleum Producers, Inc., 692 F.Supp. at 1074; Mahoney, 258 F.Supp. at 502. However, where a corporation has its nerve center in one state and its production or service activities are divided over two or more states, the nerve center assumes greater weight in determining where the corporation's principal place of business is located. White, 750 F.Supp. at 397; North Star Hotels Corp., 696 F.Supp. at 1270; Associated Petroleum Producers, Inc., 692 F.Supp. at 1074; Mahoney, 258 F.Supp. at 502.
This Court has been unable to find any Eighth Circuit case directly indicating which test it would adopt to determine a corporation's principal place of business. In any event, the differences between the tests are largely semantic. Mahoney, 258 F.Supp. at 502. Most courts, regardless of which test they purport to endorse, consider all the facts and circumstances of a corporation's business activities and do not necessarily succumb to the temptation of placing labels on the process of analysis. See White, 750 F.Supp. at 398; North Star Hotels Corp., 696 F.Supp. at 1270; Associated Petroleum Producers, Inc., 692 F.Supp. at 1074; Mahoney, 258 F.Supp. at 502. Accordingly, the Court now turns to the analysis of these facts and circumstances.
Federal conducts business in at least three states. It owns and operates beef processing facilities in West Fargo, North Dakota, and Rapid City, South Dakota. In addition, its corporate offices are located in Minneapolis, Minnesota.[1] All of Federal's corporate officers and directors reside in Minnesota as do four employees  three salespersons and a cattle buyer for the North *1434 Dakota facility. Marshall Chernin, who manages both plants for Federal, resides in Minnesota.
Federal is a subsidiary corporation which is wholly owned by GFI America, Inc. (GFI). Federal and GFI share the same officers and directors, and their corporate headquarters are both located at the same Blaisdell Avenue address in Minneapolis. GFI owns and operates a large meat processing facility at the Blaisdell Avenue address. Howard Goldberger, who is the executive vice-president of GFI and the president of Federal, asserts that the two corporations have always maintained separate employees, books, accounts, records, and minutes. Federal's South Dakota plant was originally purchased and financed by GFI in May 1990. GFI then transferred the South Dakota plant to Federal in December 1992.
Federal employs 293 employees at its North Dakota plant compared to 330 employees at its South Dakota plant. The North Dakota plant is 90,000 square feet and the South Dakota plant is 120,000 square feet. Federal supports a feed lot in connection with its South Dakota plant, although it does not own the feed lot. Similarly, Federal leased a stockyard adjacent to its North Dakota plant in connection with operations at that facility. The initial investment in the North Dakota plant was $880,000 compared to $1,300,000 at the South Dakota plant. The operating debt at the South Dakota plant is approximately four times the amount of the operating debt at the North Dakota plant and Federal alleges that it has made significant investments subsequent to purchase at the South Dakota plant that it has not made at the North Dakota plant.
Federal has developed unique methods of processing meat which are used only at the South Dakota plant. Neither party has produced information on what the gross profits of the corporation are and in what proportion they are attributable to each plant.
CBS has produced a number of financial documents and court papers from other litigation in which Federal listed its address as Minnesota. In most cases, these exhibits are irrelevant because the "admissions" of Federal in these documents constitute no more than an acknowledgment that Federal's corporate headquarters are in Minnesota  something neither party disputes. However, on March 17, 1993, Federal filed an annual report as a foreign corporation with the North Dakota secretary of state. In this document, Federal stated that its principal place of business was West Fargo, North Dakota.
Although it is a close question, the Court finds that Federal's South Dakota plant does not so predominate Federal's total production that it can be said to be Federal's principal place of business. Rather, the relative equality of production activity at both the South Dakota and North Dakota plants leads this Court to the conclusion that Minnesota is Federal's principal place of business as well as the state of its incorporation. See Mahoney, 258 F.Supp. at 502 (holding a corporation's principal place of business to be Nebraska where the corporation conducted business over five states and Nebraska was the location of the corporation's nerve center as well as some of the service activity). Accordingly, Federal's motion to remand cannot be sustained on the basis that Federal and McClean are both residents of South Dakota.

B. Fraudulent Joinder of McClean
The finding that Federal is a resident of Minnesota does not end the matter. This Court's removal jurisdiction based on diversity of citizenship is more narrowly drawn than is the Court's diversity jurisdiction over cases originally filed in federal court. All that is required for suits originally filed in federal court is that all defendants reside in states other than the plaintiff. See 28 U.S.C. § 1332. However, for diversity cases initiated in state court and removed to federal court, Congress has imposed the additional requirement that no defendant can be a resident of the state in which the action originated. See 28 U.S.C. § 1441(b) (stating in part that an action begun in state court is removable on the basis of diversity of citizenship of the parties "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").
Based on section 1441(b), Federal asserts that the Court must remand this action because *1435 Leendelle McClean is a resident of South Dakota. That being so, Federal argues that removal of this action was improper under 28 U.S.C. § 1441(b) even if there exists complete diversity of citizenship among the parties because one of the defendants was a resident of the state in which the action was initiated.
CBS does not dispute that McClean is a resident of South Dakota, but instead argues in its motion for summary judgment and its response to Federal's motion to remand that McClean was fraudulently joined. If McClean was fraudulently joined, his residency is disregarded for purposes of determining the jurisdictional issue. See 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3723 (1985) ("Federal Practice & Procedure").
To sustain an allegation of fraudulent joinder, it is not necessary that the Court find that the plaintiff acted with fraudulent intent. Schwenn v. Sears, Roebuck & Co., 822 F.Supp. 1453 (D.Minn.1993). Rather, a defendant will be deemed to have been fraudulently joined if, regardless of plaintiff's motive or good faith, plaintiff has no chance of succeeding in its claim against the challenged defendant. Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir.1990); Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir.1983) (per curiam); Schwenn, 822 F.Supp. at 1455. The burden of proving fraudulent joinder rests on the defendant invoking the Court's removal jurisdiction and all doubts should be resolved in favor of remand. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993) (per curiam); Carriere, 893 F.2d at 100; Banbury v. Omnitrition Int'l, Inc., 818 F.Supp. 276, 279 (D.Minn.1993); Schwenn, 822 F.Supp. at 1455.
CBS submitted affidavits from McClean, from Ray Lum, and from Robert Currie, an agent of CBS, establishing that it was Lum and no other person who carried the video camera into Federal's plant to video tape the meat processing procedures. The affidavits establish that McClean had no contact at all with CBS and was not involved in obtaining the videotape on which Federal's claims in this action are based. The affidavits submitted by Federal go to the issue of whether Federal had reasonable grounds to believe  at the time McClean was named as a defendant  that McClean was involved in obtaining the videotape.[2] Although Federal states in its briefs that it is not relinquishing the possibility of asserting claims against McClean, it has produced no evidence upon which any claim against McClean could be based. If Federal has no possibility of recovery against McClean, Federal's prior good faith belief that it might recover against McClean cannot prevent a finding of fraudulent joinder. See Monroe v. Consolidated Freightways, Inc., 654 F.Supp. 661, 663 (E.D.Mo. 1987) (citing 14A Federal Practice & Procedure § 3723 at 354).
Federal contends that the Court must disregard matters outside of the pleadings (affidavits) and rely solely on the face of Federal's complaint. If the Court may consider the affidavits submitted by both parties, it is clear that Federal has no possibility of recovering against McClean on its stated claims and that McClean was fraudulently joined. If, however, the Court is limited to considering Federal's complaint, it must accept as true the facts alleged therein and hold that McClean was appropriately joined. Such a holding would require remand of the action pursuant to the dictates of 28 U.S.C. § 1441(b). The crux of the issue, then, rests on whether the Court may "pierce the pleadings" and consider the submitted affidavits to determine the propriety of McClean's joinder.
The United States Court of Appeals for the Fifth Circuit has held that a district court may employ a procedure similar to that utilized in summary judgment motions and consider affidavits and depositions in addition to the pleadings themselves to determine allegations of fraudulent joinder. See Carriere, *1436 893 F.2d at 100. In Anderson, the Eighth Circuit court stated that "[f]raudulent joinder exists if, on the face of the plaintiff's state court pleadings, no cause of action lies against the resident defendant." Anderson, 724 F.2d at 84.
Federal maintains that the Anderson court's statement is an affirmative prohibition on a district court's piercing the pleadings. However, the Court finds the statement susceptible of another interpretation: if the pleadings themselves show the claim against the challenged defendant is insupportable, then fraudulent joinder exists, but if the pleadings themselves do not reveal whether the claims are supportable, Anderson does not apply.
District courts in the Eighth Circuit have differed in their interpretation of Anderson. The United States District Court for the District of Minnesota has expressed the opinion that Anderson prohibits district courts from piercing the pleadings to determine issues of fraudulent joinder. See Schwenn, 822 F.Supp. at 1455.[3] However, the United States District Court for the Eastern District of Missouri has cited Anderson, yet allowed the pleadings to be pierced to determine issues of fraudulent joinder. See Monroe, 654 F.Supp. at 663 (holding that the court could examine supporting affidavits); Brown v. Southland Corp., 620 F.Supp. 1495, 1497 (E.D.Mo.1985) (holding that court could consider supporting affidavits and deposition transcripts).
The Eighth Circuit recently held that in the absence of a specific request for an evidentiary hearing on a motion for remand, the district court had not abused its discretion in not holding such a hearing. In re Business Men's Assurance Co. of America, 992 F.2d at 183. The Business Men's decision is significant for this reason: if piercing the pleadings were not appropriate on a motion for remand, the Eighth Circuit could simply have said that the district court was not allowed to hold an evidentiary hearing. Instead, the Eighth Circuit's holding suggests that receiving extra-pleading evidence on a motion for remand might sometimes be appropriate.
In view of the Business Men's decision, the Court is inclined to agree with the analysis of the Eastern District of Missouri that piercing the pleadings is appropriate to determine issues of fraudulent joinder. Accordingly, the Court holds based on the pleadings and affidavits submitted that McClean was fraudulently joined. See Southland Corp., 620 F.Supp. at 1497 (fraudulent joinder exists where no facts support plaintiff's claim against challenged defendant). Therefore, McClean's presence in the lawsuit at the time of removal does not defeat this Court's jurisdiction pursuant to 28 U.S.C. § 1441(b).

CONCLUSION
Based on the foregoing discussion, it is hereby
ORDERED that Federal's motion to remand (Docket No. 37) is denied.
IT IS FURTHER ORDERED that the joint motion by CBS and McClean for summary judgment (Docket No. 19) is granted.
The Court notes that on March 30, 1994, it entered an order staying further discovery in this case pending the Court's resolution of Federal's motion to remand. That motion having been resolved, it is hereby
ORDERED that discovery between the parties in this case shall resume according to the Federal Rules of Civil Procedure and this district's local rules.
NOTES
[1] CBS submitted an exhibit which showed that Federal had applied for a certificate of authority to conduct business in Colorado as well, but neither party has indicated what the nature of Federal's business in Colorado might be.
[2] Federal's affidavits establish that the person who obtained the videotape wore a hooded sweatshirt to Federal's plant to conceal the video camera, that McClean wore such a garment on or about the day the videotape was obtained, that McClean took a one-week leave of absence from work for eye surgery which he never received, that McClean had come into some money, and that, after Federal had sued McClean, McClean warned some acquaintances not to falsely accuse him.
[3] Judge Doty in the Banbury decision did not determine  as Federal suggests  whether it was appropriate to pierce the pleadings. See Banbury, 818 F.Supp. at 279-80. Rather, Judge Doty simply held that, assuming it was appropriate to pierce the pleadings, remand was nonetheless warranted because there were facts supporting the plaintiff's claims against the challenged defendants, although the court did not determine the merits of those claims. Id.