NERCO DELAMAR COMPANY, an Oregon corporation, Plaintiff,

v.

NORTH AMERICAN SILVER COMPANY, an Idaho corporation, Defendant.

Civ. No. 88–1328.

United States District Court,
D. Idaho.

Jan. 19, 1989.

Randolph C. Foster, Kevin Q. Davis, Stoel, Rives, Boley, Jones & Grey, Port-

---

**810**

land, Or., Thomas A. Banducci, Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, Idaho, for plaintiff.

A.L. Lyons, Lyons and Noack Associates, Boise, Idaho, for defendant.

## MEMORANDUM OPINION AND ORDER

RYAN, Chief Judge.

### I. FACTS & PROCEDURE

Currently before the court is Defendant North American Silver Company's (North American) Motion to Dismiss for Lack of Federal Jurisdiction. The motion to dismiss is filed pursuant to 28 U.S.C. § 1332 which requires complete diversity of jurisdiction between parties. If Nerco Delamar Company's (Delamar) principal place of business is Idaho, then complete diversity is lacking and this court must dismiss for lack of subject matter jurisdiction. *Homestead Log Co. v. Square D Co.*, 555 F.Supp. 1056 (Idaho 1983).

### II. ANALYSIS

A corporation is, for purposes of Section 1332, a citizen of both its place of incorporation and its principal place of business. As the court noted in *Homestead*, "[t]here are two tests available to this court by which to determine the location of the principal place of business [of a corporation]. These are: the 'nerve center' approach and the 'place of operations' approach." *Id.* at 1057. The court, in determining which test to apply, considers both the character of the subject corporation and the scope of its activities. *Id.*

Once the court determines which test to apply, it weighs several factors. The factors vary, however, depending upon which test is adopted. Under the "nerve center" approach the court looks to the place:

> [W]here the directors and stockholders meet; where the executives live, have their offices, and spend their time; where the administrative and financial offices are located and records kept; where the corporate income tax return is

filed; and by the place which is designated in the charter or other corporate documents as the official headquarters of the company.

*Homestead Log Co. v. Square D Co.*, 555 F.Supp. at 1057 (citation omitted). Under the "place of operations" approach, the court examines:

> [T]he location of the real property, equipment, inventory and any other tangible assets, the distribution of employees and payroll, the allocation of gross income, the situs of production, sales, shipping and other physical activities, and the location of the operational offices.

*Id.*

North American has urged the court to apply the "place of operations" approach. North American, accordingly, has offered evidence tending to show that the bulk of Delamar's mining activities are conducted within Idaho. North American, in support of its motion to dismiss, asserts that Plaintiff Nerco Delamar Company (Delamar) is solely and primarily in the business of mining; that the bulk, if not the entirety, of Delamar's mining operations are conducted at Delamar Silver Mine and Florida Mountain, both of which are located entirely in Idaho; that Delamar, in furtherance of its mining operations, owns, maintains, and operates machinery, equipment, supplies, buildings and structures worth an estimated $38 million and employs approximately 180 people at the Delamar mine in Idaho.

Neither the Complaint filed by Delamar nor the affidavit submitted in opposition to North American's motion to dismiss dispute these assertions. Delamar has, instead, encouraged the court to adopt the "nerve center" approach. Consequently, Delamar has offered evidence tending to establish that the bulk of its administrative and executive operations are conducted out of Oregon and Washington, not in Idaho. Delamar, relying on this evidence, concludes that either Oregon or Washington is its principal place of business.

The affidavit of Mr. John B. Eichenauer, Assistant Secretary of Delamar, offered in opposition to North American's motion to dismiss, establishes that Delamar's head-

quarters and principal offices are located in Washington; that the sole stockholder of Delamar is Nerco Minerals Co., a subsidiary of Nerco, Inc., an Oregon corporation; that the officers and directors of Delamar live and work in either Oregon or Washington; that Delamar owns real estate and mineral rights in Oregon, Nevada, and Idaho; that Delamar owns residential real estate in Oregon; that Delamar employs approximately 200 people of which over one-half reside in Oregon; that Delamar's administrative, financial, and accounting offices and records are maintained in Washington; that Delamar's corporate federal income tax returns are consolidated with Pacificorp, an Oregon corporation; that Delamar's accounting and income tax returns are prepared in Oregon; that shipment of "dore" is controlled from Washington; that the dore is refined in Utah, New Jersey, and France; that marketing of the refined dore is conducted from Washington; that land acquisition decisions for Delamar are made in Washington; that Delamar's insurance needs are managed by Nerco, Inc.; that, with one exception, all exploration geologists who provide services for Delamar are located in Washington; and that capital acquisitions are purchased and paid for out of Washington.

■ The majority of courts that have reached the issue have held that the principal place of business of a mining corporation is not determined by the "nerve center" test, but rather by a "place of operations" test. *Riggs v. Island Creek Coal Co.,* 542 F.2d 339, 341 (6th Cir.1976) (*citing Mattson v. Cuyuna Ore Co.,* 180 F.Supp. 743 (D.Minn.1960); *Hodges v. Georgia Kaolin Co.,* 207 F.Supp. 374 (M.D.Ga.1962); *Potocni v. Asco Mining Co.,* 186 F.Supp. 912 (W.D.Pa.1960); *Continental Coal Corp. v. Roszelle Bros.,* 242 F. 243 (6th Cir.1917)).

The Sixth Circuit, in *Island Creek,* although agreeing with the lower court that the principal place of business for a mining corporation was generally its "place of operations," reversed the district court where it found that the court had summarily dismissed the corporation's headquarters as irrelevant for purposes of subject matter jurisdiction. The court in *Island Creek* adopted the "nerve center" test only because it found that the "bulk" of the mining corporation's activities were divided in an unknown proportion between three states.

The fact that the Sixth Circuit reversed the lower court, however, should not be construed as a departure from the rule that a mining corporation's principal place of business is generally determined using the "place of operations" test; the reversal is not an adoption of the "nerve center" test. To the contrary, the court in *Island Creek* noted that "if the 'bulk' of the mining operations were shown to be located in one state, we could accept the district court's conclusion that that state constituted the corporation's principal place of business." *Id.* at 342.

It is clear that the court in *Island Creek,* rather than espouse a generic rule to be applied blindly to all mining corporations, preferred to adopt a flexible approach, an approach under which a corporation's principal place of business is determined on a case-by-case basis. This approach is consistent with that adopted by this court in *Homestead.*

■ As noted above, the court in *Homestead* held that the decision of which test to adopt includes a consideration of both the character of the corporation and the scope of its activities. The court, after considering both the character of Delamar and the scope of its activities, concludes that the "place of operation" approach should be applied. This conclusion is reached in large part in reliance upon the statements and allegations made by Delamar in the Complaint.

The factual averments in the Complaint, which will be taken as true for purposes of this motion, establish that the Delamar mine is located within Owhyee County in the State of Idaho; that the mine covers approximately six square miles; that Delamar, in operating the Delamar mine, conducts a myriad of operations on location, including blasting, blending, crushing, leaching, milling, washing, and separating

the rock from the precious metals; that Delamar stockpiles low-grade materials at the Delamar site; that Delamar produces gold-silver bullion buttons known as "dore" at the Delamar site; that these bullion buttons are stored at the Delamar site while awaiting shipment to a refinery for further processing; and that the liquid waste produced at the Delamar mine is sent to a tailings containment pond located at the Delamar mine. The facts as set forth in the Complaint establish that Delamar is a mining corporation. The Complaint further establishes that the bulk of Delamar's mining operations are conducted in Idaho.

The affidavit of Mr. Eichenauer offered by Delamar in support of its claim of diversity does not controvert these facts. Instead, the affidavit relies in part on the marketing, distribution, and selling aspects conducted in Oregon and Washington by both Delamar and Nerco as evidence of diversity. The court in *Georgia Kaolin,* commenting on virtually identical facts, noted:

> While it is true that the product of the mines must be sold, the selling is not the dominant feature of the business. It is the *production* end that is the prominent feature of the business and to which the efforts of the great majority of the employees and the large percentage of the assets are devoted.

*Hodges v. Georgia Kaolin Co.,* 207 F.Supp. at 376 (emphasis added). Other courts, in deciding which approach to adopt in determining a corporation's principal place of business, have looked to the purposes for which the corporation was incorporated. *See Mattson v. Cuyuna Ore Co.,* 180 F.Supp. 743 (D.Minn.1960). Under either approach, however, the court finds that the "place of operations" approach is the proper test to apply under the facts.

Delamar asserts several other facts in opposition to North American's motion to dismiss. Delamar contends that over one-half of its employees are residents of Oregon. Delamar, in emphasizing the residence of the Delamar employees, overlooks the fact that a large percentage of its employees work at the Delamar mine site in Idaho. The fact that Delamar *owns* residential real estate and other real estate and mineral rights in Oregon, Nevada, and Idaho is also irrelevant to the analysis. Delamar has not alleged that it is conducting mining operations on these properties. Neither has it alleged, nor does it appear from the record before the court, that the mineral rights were being developed or exercised at the time this matter was filed. Delamar contends that these factors taken together suggest that Oregon or Washington, not Idaho, is its principal place of business.

It should be noted that the court is not ignoring the fact that Delamar has offered evidence that the executive and administrative offices are situated in Oregon and Washington. The court, while realizing that the location of these offices weigh in the analysis, believes that the character of Delamar, a mining corporation, and the scope of its activities require the court to place added emphasis on the operational aspects of the mine.

In conclusion, the court finds that the bulk of Delamar's mining operations, including physical assets and employees, are located or employed within Idaho. In this case, as in *Georgia Kaolin,* the production end is the dominant feature of Nerco Delamar Company. Production is centered around the Delamar mine itself. Moreover, a large percentage of Delamar's inventory, equipment, real property, other tangible assets, and workers are employed in the actual day-to-day mining operations in Idaho.

## III. ORDER

Based upon the foregoing, and the court being fully advised in the premises, the court FINDS that Nerco Delamar Company's principal place of business is Idaho.

THEREFORE, IT IS HEREBY ORDERED that defendant's Motion to Dismiss for Lack of Federal Jurisdiction should be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiff's Complaint in the above-entitled case should be, and is hereby, DISMISSED.