QUALITY REFRIGERATED SERVICES, INC., Plaintiff,

v.

CITY OF SPENCER, and the City Council for the City of Spencer, and its Members, Steve Waller, Ed Krebs, Reynold Peterson, Mary Huston, Jim Roling, Ron Sears and David Scott, Defendants.

No. C 95–4061.

United States District Court, N.D. Iowa, Western Division.

Nov. 2, 1995.

1472

Michael W. Ellwanger of Rawlings, Nie-land, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, Iowa, and Steve P. DeVolder of Lewis, Webster, Johnson, Van Winkle & DeVolder, Des Moines, Iowa, for plaintiff.

John D. Ackerman of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, Iowa, for defendants.

## ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

BENNETT, District Judge.

**1476**

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND .................................... 1476

II. FACTUAL BACKGROUND ........................................... 1478

III. LEGAL ANALYSIS ............................................... 1479
 A. Subject Matter Jurisdiction And Failure To State A Claim ................. 1479
 B. Facial Or Factual Challenge Pursuant To Rule 12(b)(1) ..................... 1481
 C. The Existence Of Diversity Between Quality Refrigerated and Defendants.... 1483
 1. Tests Employed to Determine Corporation's Principal Place of Business ...................................................... 1484
 2. Quality Refrigerated's Principal Place of Business ...................... 1485
 D. Quality Refrigerated's Taking Clause Claim ............................. 1486
 E. Motion to Amend ..................................................... 1488
 1. Standards for Motions to Amend ................................... 1488
 2. Futility of Amendment ............................................ 1489
 3. Standard For Dismissal Pursuant To Rule 12(b)(6)...................... 1490
 4. The Viability of the Proposed Contract Clause Claim .................. 1490
 a. Substantial Impairment........................................ 1492
 b. Public Purpose .............................................. 1493

IV. CONCLUSION .................................................. 1493

The present motion to dismiss before this court requires it, as a court of limited jurisdiction, to assure itself that the threshold requirement of subject matter jurisdiction has been met. Defendants, Iowa citizens, challenge Plaintiff's invocation of diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Resolution of this issue is controlled by the question of whether Plaintiff's principal place of business is in Iowa, or Nebraska. If Plaintiff's principal place of business is Iowa, Plaintiff is a citizen of Iowa under 28 U.S.C. § 1332(c)(1), and does not have citizenship diverse from that of Defendants. Thus, the court would not have subject matter jurisdiction pursuant to section 1332. If, on the other hand, Plaintiff's principal place of business is Nebraska, complete diversity of citizenship exists between Plaintiff and Defendants, and the court has diversity of citizenship jurisdiction. Defendants also contend that Plaintiff's Taking Clause claim does not serve as the basis for federal question jurisdiction in this case because its Taking Clause claim is not ripe for adjudication. Defendants further assert that Plaintiff's proposed amendment to its complaint, to assert a claim under the Contract Clause, Article 1, Section 10 of the United States Constitution and federal question jurisdiction pursuant to 28 U.S.C. § 1331, should be denied as futile. However, if the amendment is granted, an alternative basis for subject matter jurisdiction would exist in this matter.

## I. INTRODUCTION AND BACKGROUND

On June 23, 1995, Plaintiff Quality Refrigerated Services, Inc. ("Quality Refrigerated") filed this lawsuit against Defendants the City of Spencer, the City Council for the City of Spencer, and its members Steve Waller, Ed Krebs, Reynold Peterson, Mary Huston, Jim Roling, Ron Sears, and David Scott, following the denial of a rezoning request made by Quality Refrigerated concerning its Spencer, Iowa, facility.

In Count I of its Complaint, Quality Refrigerated claims that Defendants actions intentionally interfered with a contract that Quality Refrigerated had to lease part of the Spencer facility. In Count II of its complaint, Quality Refrigerated asserts a claim of intentional interference with a contract, alleging that Defendants intentionally interfered with a loan agreement Quality Refrigerated had with the City of Spencer. In Count III of the complaint, Quality Refrigerated asserts another claim for intentional interference with a contract, alleging that Defendants intentionally interfered with an industrial agreement that Quality Refrigerated had with the City of Spencer. In Count IV of the complaint, Quality Refrigerated asserts a claim for intentional interference

with prospective business advantage, alleging that Defendants' actions caused prospective tenants not to enter into contractual relationships with Quality Refrigerated. In Count V of the Complaint, Quality Refrigerated contends that Defendants made negligent misrepresentations to it. In Count VI of the Complaint, Quality Refrigerated asserts that Defendant City of Spencer breached an industrial development agreement with it. In Count VII, Quality Refrigerated asserts a claim for inverse condemnation, alleging that the Defendants' adoption of a zoning statute resulted in a taking of Quality Refrigerated's property. In Count VIII, Quality Refrigerated requests declaratory judgment that its Spencer facility is a nonconforming use which under the zoning ordinance can lawfully be used for meat fabricating and processing.

On July 17, 1995, Defendants filed a Motion to Dismiss, asserting five grounds. First, Defendants contend that complete diversity does not exist between the adverse parties in this case because Defendants are citizens of Iowa, and Quality Refrigerated's principal place of business is in Iowa, making Quality Refrigerated a citizen of Iowa under 28 U.S.C. § 1332(c)(1). If Plaintiff's principal place of business is in Iowa, not Nebraska, then complete diversity does not exist between Defendants, citizens of Iowa, and Plaintiff, a citizen of Iowa. Determining Quality Refrigerated's principal place of business requires the court to investigate the intricate details surrounding the nature or essence of its business and activities. This intense level of scrutiny is embodied in the tests which other courts have developed for determining a corporation's principal place of business for purposes of ascertaining the existence or lack of federal diversity jurisdiction.

Second, Defendants contend that the complaint fails to state a claim for monetary damages against the City of Spencer as a matter of law. Defendants assert that the industrial development agreement expressly prohibits the recovery of such damages in the event of a breach. Third, Defendants assert that Count V of the complaint fails to state a claim upon which relief may be granted because only economic damages are sought for Defendants' alleged negligence. Fourth, Defendants assert that Count VII of the complaint fails to state a claim upon which relief may be granted because the zoning ordinance does not deprive Quality Refrigerated of all economically productive uses for its Spencer facility. Finally, Defendants assert that Count VIII should be dismissed because it is duplicative of an action filed by Quality Refrigerated in Iowa State court.

Following the filing of the motion to dismiss, on September 1, 1995, Quality Refrigerated filed a motion to amend complaint in which it sought to amend its complaint to assert a contracts claim under Article 1, Section 10 of the United States Constitution. The amended complaint also asserts that the claim set forth in Count VII of the original complaint alleges a basis for federal question jurisdiction pursuant to 28 U.S.C. § 1331. Thus, if the amendment is granted, an alternative basis for subject matter jurisdiction would exist in this matter. First, Quality Refrigerated's Taking Clause claim would serve as the basis for federal question jurisdiction in this case if it is deemed ripe for adjudication. Similarly, Quality Refrigerated's proposed amendment asserting a claim under the Contract Clause claim would serve as a basis for subject matter jurisdiction if that claim is not futile.

A hearing on Defendants' Motion to Dismiss and Quality Refrigerated's Motion to Amend was held on October 13, 1995. At the hearing Plaintiff was represented by Michael W. Ellwanger of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, Iowa, and Steve P. DeVolder of Lewis, Webster, Johnson, Van Winkle & DeVolder, Des Moines, Iowa. Defendants were represented by John D. Ackerman of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, Iowa. Counsel presented vigorous for oral arguments on behalf of their clients. The oral arguments were unusually spirited and of considerable assistance to the court in resolving the jurisdictional issues before the court. This matter is now deemed fully submitted.

## II. FACTUAL BACKGROUND

The Defendants have supplied affidavits in support of their position with regard to the motions to dismiss from which, in addition to the complaint and the answer, the court has extracted the following facts.

Defendant, the City of Spencer, is a municipal corporation organized under the laws of the State of Iowa. Defendant, the City Council for the City of Spencer ("the City Council"), is a municipal council organized under the laws of the State of Iowa. Defendants, Steve Waller, Ed Krebs, Reynold Peterson, Mary Huston, Jim Roling, Ron Sears, and David Scott, are all individuals who reside in the City of Spencer, and were members of the City Council.

Prior to 1984, a meat packing plant was located in Spencer, Iowa. This packing plant, generally referred to as the Spencer pack, was closed in 1984. From 1984 through 1989, attempts were made by city officials and civic representatives to locate a company which would occupy the Spencer pack. In 1989, city officials and civil representatives, acting by or with the approval of Defendants, contacted Timothy A. Jackes regarding the Spencer pack. Jackes was the sole owner of Quality Refrigerated. Jackes toured the Spencer pack on behalf of Quality Refrigerated and had discussions with Spencer City officials and representatives regarding Quality Refrigerated's acquisition and development of the Spencer pack. These discussions culminated in a letter memorandum dated September 5, 1989.[1] Quality Refrigerated's development of the Spencer pack would occur in three phases. In Phase I, a portion of the Spencer pack would be converted for refrigerated warehousing. In Phase II, another portion of the Spencer pack would be converted into "a box storage/sortation area, fab[ricating]/processing area."

Quality Refrigerated was incorporated on March 24, 1989 in Nebraska by Timothy A. Jackes. At the time of its incorporation in March of 1989, Quality Refrigerated's assets consisted of computers, desks and chairs.

Initially, Quality Refrigerated did consulting work for three companies. Quality Refrigerated leased 800 to 1000 square feet of office space in Omaha, Nebraska. Until October of 1989, Quality Refrigerated had only two employees, Timothy A. Jackes and his wife, Elizabeth R. Jackes. On October 20, 1989, Quality Refrigerated entered into a written "Industrial Development Agreement" with Defendant City of Spencer, Iowa, to renovate the Spencer pack facilities.[2] The Industrial Development Agreement provided that ownership of the Spencer pack would be transferred to Quality Refrigerated and that Quality Refrigerated would have the right to lease up to seventy-five percent of the Spencer pack. Possession of the Spencer pack facility was turned over to Quality Refrigerated in October 1989, and title to the property was obtained by Quality Refrigerated in January 1990. When acquired by Quality Refrigerated, the Spencer pack facility had 120,000 square feet of space in its main plant, and another 10,000 square feet in other buildings. At the time the Industrial Development Agreement was executed, and at all times that the Spencer Pack had been in operation, the Spencer pack had been located in an area zoned "Heavy Industrial." This zoning designation permitted all aspects of Quality Refrigerated's planned operations for the Spencer pack facility to be carried out, including refrigerated warehousing, meat fabrication, meat processing and attendant meat packaging.

On February 28, 1990, Quality Refrigerated opened its warehouse business in the Spencer pack facilities. When Quality Refrigerated commenced operation in the Spencer pack facilities it occupied 38,250 square feet for its offices, dock area, and warehouse area. On April 25, 1991, the date of the zoning ordinance, Quality Refrigerated occupied 76,500 square feet for its offices, dock area, warehouse and two processing rooms. Currently, Quality Refrigerated occupies 106,000 square feet in the Spencer pack facilities for its offices, dock area, warehouse, and processing facilities and offices for a processing tenant.

---

1. A copy of the September 5, 1989, memorandum is attached to the complaint as Exhibit "A".

2. A copy of the industrial agreement is attached to the complaint as Exhibit "B".

In October of 1992, Quality Refrigerated located a possible tenant, New Visions, to undertake meat fabrication and processing at its Spencer pack facility. New Visions signed a lease for the Phase II portion of the Spencer pack. New Visions, and its successor corporation, Horizons Limited, required governmental grants to begin operations. In November 1992, the Defendants passed a resolution to pursue the governmental grants required by New Horizons. New Horizons subsequently defaulted on its lease and did not commence operations at the Spencer pack facility. In April 1991, Defendants adopted and approved a comprehensive zoning plan which changed the zoning designation of the Spencer pack facility from "heavy industrial" to "highway commercial." Following the change in zoning, Defendants encouraged Quality Refrigerated to locate a tenant in order to complete Phase II of Quality Refrigerated's plan for the Spencer pack. In 1994, Quality Refrigerated and ConAgra, Inc. d/b/a/ Monfort Pack ("Monfort") began negotiations for Monfort to lease the Phase II portion of the Spencer pack facility. On February 9, 1995, Quality Refrigerated and Monfort entered into a ten year lease with the initial term to commence on June 1, 1995.[3] Defendants were aware of Quality Refrigerated's negotiations with Monfort. On February 9, 1995, Quality Refrigerated applied for a building permit to do additional remodeling to the Spencer pack to accommodate the needs of Monfort. Quality Refrigerated was told by city employees that the permit could not be issued because of the April 1991, zoning changes, and that the Spencer pack would have to be rezoned before the proposed use, for a boning operation, could be carried out at the Spencer pack. On February 13, 1995, Quality Refrigerated filed an application for rezoning with the City of Spencer.[4] On March 1, 1995, the Spencer Planning and Zoning Commission approved the rezoning. On March 27, 1995, at a meeting of the City Council of the City of Spencer, the City of Spencer denied the requested rezoning.

In the summer of 1990, Quality Refrigerated obtained a $400,000 loan from the Spencer Area Jobs Trust for improvements to the Spencer pack facilities. From 1989 through 1994, Quality Refrigerated invested $3,560,085.00 in the Spencer pack facilities. Quality Refrigerated has $3,226,499.00 in total assets in the Spencer pack facility. Quality Refrigerated employs between ten and twenty full time employees, and an additional twenty-five part time employees at its Spencer pack facilities. In 1994, the Spencer plant had gross receipts of $1,402,774.00. In 1995, to date, Quality has gross receipts of $839,932.00.

Prior to March 1992, Quality Refrigerated's only ongoing business enterprise was its Spencer pack facility. In March 1992, Quality Refrigerated commenced operation of a cold storage warehouse in Omaha, Nebraska. Quality Refrigerated leases a 45,000 square feet building and sub-leases half of that space to a meat processing company, H. Schnitzel International. In late 1993, Quality Refrigerated moved its corporate headquarters to the location of its Omaha cold storage warehouse facility. Quality Refrigerated's Omaha facility employs seven full time employees and four part time employees. In 1994, the Omaha facility had gross receipts of 667,399.00. In 1995, to date, the Omaha facility has gross receipts of $385,592.00.

## III. LEGAL ANALYSIS

### A. Subject Matter Jurisdiction And Failure To State A Claim

Defendants have moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Federal Rule of Civil Procedure 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. As the parties correctly point out, this court has previously set out the following general principles regarding subject matter jurisdiction:

> The federal district courts have always been courts of limited jurisdiction. *See*

---

3. A copy of the lease is attached to the complaint as Exhibit "E".

4. A copy of the rezoning application is attached to the complaint as Exhibit "F".

U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir.1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)); *see also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169, 1171 (8th Cir.1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra); Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). "Jurisdiction of the lower federal courts, both original and removal, is entirely a creature of statute." *Hurt v. Dow Chemical Co.,* 963 F.2d 1142, 1145 (8th Cir.1992); *Continental Cablevision v. United States Postal Serv.,* 945 F.2d 1434, 1435 (8th Cir.1991). If one of the statutory requirements is not met, the district court has no jurisdiction. *Hurt,* 963 F.2d at 1145.

*Iowa Comprehensive Petroleum Bd. 990C80656 v. Amoco Oil Co.,* 883 F.Supp. 403, 408 (N.D.Iowa 1995); *Iowa Lamb Corp. v. Kalene Indus.,* 871 F.Supp. 1149, 1154–55 (N.D.Iowa 1994).

▉ "The parties ... may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court." *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965); *see also Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) ("[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent ..." (citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 n. 21, 98 S.Ct. 2396, 2404 n. 21, 57 L.Ed.2d 274 (1978)); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556–57, 42 L.Ed.2d 532 (1975); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 541–42, and n. 17 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 [33 U.S. 148, 149] (1834)); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."). Even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix,* 43 F.3d 374, 376 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir.1993)). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders,* 823 F.2d at 216. However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Id.* Because jurisdiction is a threshold issue for the court, the district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Bellecourt v. United States,* 994 F.2d 427, 430 (8th Cir.1993) (quoting *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990), which in

turn quotes *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)), *cert. denied,* ——— U.S. ———, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994).

## B. Facial Or Factual Challenge Pursuant To Rule 12(b)(1)

■■■ For the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. *Titus v. Sullivan,* 4 F.3d 590, 593 (8th Cir.1993). The court in *Titus* distinguished between the two kinds of challenges:

> In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 731–32 (11th Cir. 1982)....
>
> If the [defendant] wants to make a *factual* attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, n. 4, 91 L.Ed. 1209 (1947) [footnote omitted]. The proper course is for the defendant to request an evidentiary hearing on the issue. *Osborn [v. United States],* 918 F.2d [724,] 730 (citing *Crawford v. United States,* 796 F.2d 924, 928 (7th Cir.1986)).

*Id.* (emphasis in original). The Defendants have not requested such an evidentiary hearing, although they have submitted affidavits in support of their motion. The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Rule 12(b)(1). *Drevlow v. Lutheran Church, Missouri Synod,* 991 F.2d 468, 470 (8th Cir.1993). If material facts are adjudicated by the court in determining its jurisdiction, the appellate court will review the findings of fact for clear error. *Id.* Where the material facts are not in dispute, the appellate court will review the court's determination that it lacks jurisdiction de novo. *Id.* If the court considers matters outside of the pleadings, however, it may not, without notice to the parties, convert a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) into a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which is subject to summary judgment disposition, because to do so would not allow the parties to respond to the issue the court is weighing for summary judgment. *Layton v. United States,* 919 F.2d 1333, 1334–35 (8th Cir.1990).[5]

In *Osborn v. United States,* 918 F.2d 724 (8th Cir.1990), the Eighth Circuit Court of Appeals presented its most exhaustive discussion of the procedures and requirements for determination of a 12(b)(1) motion to dismiss.

> The district court was correct in recognizing the critical differences between Rule 12(b)(1), which governs challenges to subject matter jurisdiction, and Rule 56, which governs summary judgment. Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings. [Citations omitted.] Rule 12 does not prescribe, however, summary judgment treatment for challenges under 12(b)(1) to subject matter jurisdiction where a factual

---

**5.** In *Layton,* the court noted that a 12(b)(1) motion is distinguishable from a 12(b)(6) motion on the ground that the Rules expressly provide that the latter is subject to conversion into a summary judgment motion, while no such provision exists for a 12(b)(1) motion. *Layton,* 919 F.2d at 1335. However, courts have approved such a conversion of a 12(b)(1) motion when appropriate. *Id.* (citing *Less v. Lurie,* 789 F.2d 624, 625 n. 1 (8th Cir.1986)). There is, however, an exception to the notice requirement before the court makes a conversion into a summary judgment motion ar-

ticulated in *Van Leeuwen v. United States Postal Serv.,* 628 F.2d 1093, 1095 (8th Cir.1980), which requires that if both parties have submitted affidavits and exhibits outside the pleadings which they understand the district court has accepted for consideration, then the non-moving party has notice of the court's intention to treat the motion to dismiss as one for summary judgment. *Id.* (concluding that the court could not invoke the *Van Leeuwen* exception on the basis of a unilateral submission of exhibits by the moving party).

record is developed. Nonetheless, some courts have held that Rule 56 governs a 12(b)(1) motion when the court looks beyond the complaint. We agree, however, with the majority of circuits that have held to the contrary.... [Citations omitted.]

The reason for treating a 12(b)(1) motion differently than a 12(b)(6) motion, which is governed by Rule 56 when matters outside the pleadings are considered, "is rooted in the unique nature of the jurisdictional question." *Williamson [v. Tucker]*, 645 F.2d [404,] 413 [ (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. It is "elementary," the Fourth [sic] Circuit stated, that a district court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." *Id.* Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide. *Id.* Moreover, because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion.

*Osborn*, 918 F.2d at 729.

The *Osborn* court found the distinction between facial and factual attacks on the complaint under 12(b)(1) to be critical. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980), and *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). The court stated that

[i]n the first instance, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed " 'unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Id.* at 729 n. 6 (citations omitted).[6] A factual challenge to jurisdiction under 12(b)(1) is unique:

[H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Id.* at 730 (quoting *Mortensen*, 549 F.2d at 891). The *Osborn* court stated that the proper course is for the defendant to request an evidentiary hearing on the issue, and, since no statute or rule prescribes the format of such a hearing, " 'any rational mode of inquiry will do.' " *Id.* (quoting *Crawford*, 796 F.2d at 929).

Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. [*Crawford*, 796 F.2d at 929.] The only exception is in instances when the jurisdictional issue is "so bound up with the merits that a full trial on the merits may be necessary to resolve the issue." *Id.*

---

**6.** The standards for dismissal under Rule 12(b)(6) were recently restated in *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir.1994):

> We must construe the allegations in the complaint in the light most favorable to [plaintiff], see [*Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n*, 970 F.2d 421, 425 (8th

Cir.1992) ], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

*Id.*[7]

In the present case, the court concludes that Defendants have made a factual challenge to subject matter pursuant to Federal Rule of Civil 12(b)(1). The parties, however, have not asked for an evidentiary hearing on the issue. The court concludes that no adjudication of facts is necessary to address this challenge here because the parties do not dispute the factual averments made by the other, but instead assert that it is the operative effect of these facts which is controlling in this case on the question of whether diversity of citizenship jurisdiction exists in this matter.

### C. The Existence Of Diversity Between Quality Refrigerated and Defendants

■■■■ Defendants contend that although Quality Refrigerated is incorporated in Nebraska, it has its principal place of business in Iowa. As a court of limited jurisdiction, a federal court has an obligation to assure itself that it has subject matter jurisdiction in every case. *Thomas v. St. Luke's Health Sys., Inc.,* 869 F.Supp. 1413, 1424 (N.D.Iowa 1994) (citing *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir. 1987). For the court to maintain subject matter jurisdiction over this case, complete diversity of citizenship must exist between the adverse parties. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Consequently, if Quality Refrigerated is a citizen of the state of Iowa, this court would lack jurisdiction to hear this case because Defendants are also from Iowa. Under 28 U.S.C. § 1332(c)(1) "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1); *see Midlantic Nat'l Bank v. Hansen,* 48 F.3d 693, 695 (3rd Cir.), *cert. denied,* — U.S. —,

116 S.Ct. 32, 132 L.Ed.2d 914 (1995). Therefore, if either the state of incorporation or Quality Refrigerated's principal place of business is Iowa, there will be no diversity.

■■■■ Here, Defendants do not contest that Nebraska is Quality Refrigerated's state of incorporation, however, Defendants have alleged that Iowa is the location of Quality Refrigerated's principal place of business, rather than Nebraska as Quality Refrigerated claims in its complaint, and accordingly, Quality Refrigerated is a citizen of Iowa pursuant to § 1332(c)(1). The party who is attempting to establish federal jurisdiction bears the burden of proof if diversity of citizenship is challenged. *Blakemore v. Missouri Pacific R.R. Co.,* 789 F.2d 616, 618 (8th Cir.1986); *Russell v. New Amsterdam Casualty Co.,* 325 F.2d 996, 998 (8th Cir.1964); *Amoco Rocmount Co. v. Anschutz Corp.,* 7 F.3d 909, 914 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994); *Media Duplication Servs. v. HDG Software, Inc.,* 928 F.2d 1228, 1235 (1st Cir.1991); *Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir.1990); *Fenton v. Freedman,* 748 F.2d 1358, 1359 n. 1 (9th Cir.1984); *Bullock v. Wiebe Constr. Co.,* 241 F.Supp. 961, 962 (S.D.Iowa 1965) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *North Star Hotels Corp. v. Mid–City Hotel Assocs.,* 696 F.Supp. 1265, 1269 (D.Minn.1988). Therefore, even though Defendants have moved to dismiss this case, Quality Refrigerated still retains the burden of showing the existence of complete diversity between the adverse parties. *Bullock,* 241 F.Supp. at 962. Thus, in this case, Quality Refrigerated has the burden of proving its principal place of business is not Iowa. The determination of a corporation's principal place of business is a mixed question of law and fact, but mainly

---

**7.** The procedure for disposing of a motion to dismiss for lack of subject matter jurisdiction on the basis of insufficient amount in controversy, for example, is that the sum claimed by the plaintiff controls if it is apparently made in good faith; to justify dismissal, it must appear to a legal certainty that the claim is for less than the jurisdictional amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82

L.Ed. 845 (1938); *Zunamon v. Brown,* 418 F.2d 883 (8th Cir.1969); *Hedberg v. State Farm Mut. Auto. Ins. Co.,* 350 F.2d 924 (8th Cir.1965). When a motion to dismiss for lack of subject matter jurisdiction brings into issue the value of the amount in controversy, the plaintiff bears the burden of establishing the jurisdictional requirement with "competent and preponderant proof." *Hedberg,* 350 F.2d at 929.

one of fact. *Blakemore*, 789 F.2d at 618; *Rogers v. Bates*, 431 F.2d 16, 18 (8th Cir. 1970); *North Star Hotels Corp.*, 696 F.Supp. at 1269.

Determining a corporation's principal place of business involves a thorough investigation into the intricate details surrounding the nature or essence of a corporation's business and activities. This intense level of scrutiny is embodied in the tests which other courts have developed or adopted to determine a corporation's principal place of business for purposes of ascertaining the existence or lack of federal diversity jurisdiction. The court will review the various tests governing the determination of a corporation's principal place of business in order to subsequently ascertain Quality Refrigerated's citizenship pursuant to § 1332(c)(1).

### 1. Tests Employed to Determine Corporation's Principal Place of Business

There are two primary tests that have been employed by the courts in determining where a corporation's principal place of business is located. First, the "nerve center" test, emphasizes the location of the managerial and policy making functions of the corporation. *See Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959) (case which developed the "nerve center" test); *Breitman v. May Co. California*, 37 F.3d 562, 563 (9th Cir.1994) (adopting nerve center test); *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir.1993) (same); *Wheelabrator Frackville Energy Co. v. Morea Culm Servs., Inc.*, 741 F.Supp. 536, 540 (E.D.Pa.1990) (same). The second test is known as the "place of activity" test, which focuses on the service and production activities of a corporation and examines the places where the corporation has the greatest contact with the public, the largest number of employees, the greatest assets, and derives most of its income. *See Mahoney v. Northwestern Bell Tel. Co.*, 258 F.Supp. 500, 502 (D.Neb.1966), *aff'd*, 377 F.2d 549 (8th Cir. 1967) (favoring the center of corporate activity test); *Tubbs v. Southwestern Bell Telephone Co.*, 846 F.Supp. 551, 554 (S.D.Tex. 1994) (using production test to find a defendant's principal place of business and then remanding for lack of diversity); *AFA Enters., Inc. v. American States Ins. Co.*, 842 F.Supp. 902, 907–08 (S.D.W.Va.1994) (rejecting the nerve center test for determining principal place of business); *Nerco Delamar Co. v. North American Silver Co.*, 702 F.Supp. 809, 811 (D.Idaho 1989); *Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp.*, 692 F.Supp. 1070, 1075 (E.D.Mo.1988). In later decisions, some courts began to see these two "principal place of business" tests as reconcilable even though other courts still speak of the two tests of determining a corporation's principal place of business. *See Federal Beef Processors, Inc. v. CBS Inc.*, 851 F.Supp. 1430, 1433 (D.S.D.1994) (concluding that "most courts, regardless of which test they purport to endorse, consider all the facts and circumstances of a corporation's business activities and do not necessarily succumb to the temptation of placing labels on the process of analysis"); *see also* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3625 (2d ed. 1984).

Most courts, however, regardless of which test they purport to endorse, consider all the facts and circumstances of a corporation's business activities and do not necessarily succumb to the temptation of placing labels on the process of analysis. *See White*, 750 F.Supp. at 398; *North Star Hotels Corp.*, 696 F.Supp. at 1270; *Associated Petroleum Producers, Inc.*, 692 F.Supp. at 1074; *Mahoney*, 258 F.Supp. at 502; *Mahoney v. Northwestern Bell Tel. Co.*, 258 F.Supp. 500, 502 (D.Neb.1966), *affirmed per curiam*, 377 F.2d 549 (8th Cir.1967). In *Mahoney* the court provided:

Even the cases which have taken the [place of activities] approach have not ignored the location of the executive offices and of management activity.... Conversely, those cases which recognize the 'nerve center' test have not done so without considering the location of the company's operations. In fact, all of the cases which have come to the attention of this Court agree that the determination must

be based on the facts of each individual case.

*Mahoney,* 258 F.Supp. at 502. As evidence of the need to examine the factors underlying both tests, other courts advocated the "total activity" test, which incorporates both the nerve center and the place of activity tests. *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir.1980); *White v. Halstead Indus., Inc.,* 750 F.Supp. 395, 397 (E.D.Ark.1990) (describing the total activities test as a hybrid of the "nerve center" and the "corporate activities" tests which involves considering all the circumstances surrounding a corporation's business to determine its principal place of business); *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 404 (5th Cir. 1987) (advocating the "total activity" test); *Barrantes Cabalceta v. Standard Fruit Co.,* 667 F.Supp. 833, 834 (S.D.Fla.1987) (the "total activity test" embraces two tests), *affirmed in part, reversed in part on other grounds,* 883 F.2d 1553 (11th Cir.1989).

■■■ Thus, the court concludes that the principal place of business of a corporation can only be decided after a careful consideration of the facts, taking into account the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations. *Bullock v. Wiebe Constr. Co.,* 241 F.Supp. 961, 963 (S.D.Iowa 1965) (noting the "nerve center" and "operating assets" tests are at most guides and are not rigid tests which are automatically determinative of a corporation's principal place of business); *High Ridge Park Assoc. v. Nycom Info. Servs., Inc.,* 821 F.Supp. 835, 837 (D.Conn.1993); *Ginn Iowa Oil Co. v. Iowa Dep't of Transp.,* 506 F.Supp. 967, 971 (S.D.Iowa 1980) (determination of principal place of business is a question of fact); *Ratner v. Hecht,* 621 F.Supp. 378, 381 (N.D.Ill.1985) (no single factor or test is determinative in assessing a corporation's principal place of business, but rather requires a consideration of the corpo-

ration's activities on a case-by-case basis); 13B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* at § 3625; *cf. Gavin v. Read Corp.,* 356 F.Supp. 483, 486 (E.D.Pa.1973) (agreeing the determination of a corporation's principal place of business is a question of fact, but concluding that the determination as to what facts are helpful in deciding a corporation's principal place of business is a question of law). Accordingly, the court now turns to the analysis of these facts and circumstances.[8]

### 2. *Quality Refrigerated's Principal Place of Business*

■■■ Upon consideration of the character of Quality Refrigerated, its purposes, the kind of business in which it is engaged, and the situs of its operations, the court concludes that its principal place of business is in the State of Iowa. Quality Refrigerated is in the cold storage warehouse business. Prior to March 1992, Quality Refrigerated's only ongoing business enterprise was its Spencer pack facility. It, however, has always maintained its headquarters in Omaha, Nebraska. Currently, Quality Refrigerated operates out of only two facilities, its Omaha facility and its Spencer, Iowa, facility. The vast majority of Quality Refrigerated's assets are located at its Spencer, Iowa, facility. Quality Refrigerated has $3,226,499.00 in total assets in the Spencer pack facility. In comparison, Quality Refrigerated has only $379,106.00 in assets in its Omaha facility. Furthermore, in terms of the size of its operations, the Spencer pack facility is the larger of the two. Currently, Quality Refrigerated occupies 106,000 square feet in the Spencer pack facilities for its offices, dock area, warehouse, and processing facilities and offices for a processing tenant. In comparison, Quality Refrigerated leases only a 45,000 square feet building in Omaha and sub-leases half of that space to a meat processing company.

---

8. This court has previously held that the "nerve center" test should be used when no state contains a substantial predominance of the corporation's business activities, but the corporation's activities are "far flung' and varied." *See Hanna v. Fleetguard, Inc.,* 900 F.Supp. 1110, 1127–28 (N.D.Iowa 1995). Here, because Quality Refrigerated's activities are neither far flung or varied, the "nerve center" test is inappropriate in this case. *See Chin v. Holiday Cruises II, Inc.,* 141 F.R.D. 367, 369 (D.Mass.1992); *Ortiz Mercado v. Puerto Rico Marine Management, Inc.,* 736 F.Supp. 1207, 1212 (D.P.R.1990).

Another factor here is that the majority of Quality Refrigerated's employees are employed at the Spencer pack facility. Quality Refrigerated employs between ten and twenty full time employees and an additional twenty-five part time employees at its, Spencer pack facilities while the Omaha facility employs seven full time employees and four part time employees. Additionally, it must be pointed out that Quality Refrigerated derives the majority of its gross receipts from its Spencer facility. In 1994, the Spencer pack facility had gross receipts of $1,402,774.00, and in 1995, to date, gross receipts of $839,932.00. The Omaha facility, in comparison, had gross receipts of $667,399.00 in 1994, and in 1995, to date, gross receipts of $385,592.00.

Thus, upon weighing these facts, the court concludes that, although Quality Refrigerated is incorporated in Nebraska, it has its principal place of business in Iowa. Therefore, having found that Quality Refrigerated's principal place of business is in Iowa, not Nebraska, complete diversity does not exist between Defendants, citizens of Iowa, and Quality Refrigerated, a citizen of Iowa. Because diversity between the adverse parties does not exist in this case, diversity jurisdiction is inapplicable in this case, and unless some other basis for jurisdiction exists, this case must be dismissed. Quality Refrigerated asserts that federal question jurisdiction exists in this case, although not pled, because of its Taking Clause claim. Defendants assert that this claim is not ripe for adjudication and therefore does not form the basis for federal question jurisdiction.

### D. Quality Refrigerated's Taking Clause Claim

■ The next inquiry which the court must take up is whether, in accordance with the doctrine developed by the Supreme Court in cases dealing with the constitutionality of land zoning regulations in which a taking without just compensation was alleged, this Quality Refrigerated's inverse condemnation claim is ripe for adjudication. *See generally* L. Tribe, *American Constitutional Law,* 86 (2nd ed. 1988); J. Nowak, R. Rotunda, J. Young, *Constitutional Law,* 515

n. 26 (3rd ed. 1986). The Fifth Amendment to the United States Constitution provides in pertinent part that a person may not "be deprived of property, without due process of law; nor shall private property be taken for public use without just compensation." The Taking Clause of the Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). In *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court held that an action by a developer under the Taking Clause and the Due Process Clause for a taking by regulation was premature. The Court developed a two-prong test designed to determine whether an action brought under the Taking Clause of the Constitution was ripe for judicial review. First, the Court identified the need for plaintiffs to obtain a final decision from the appropriate regulatory agencies on how they will be allowed to develop their property. Elaborating on this initial requirement, the Court stated:

> Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although '[t]he question of what constitutes a "taking" for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty', this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Williamson,* 473 U.S. at 190–91, 105 S.Ct. at 3118–19 (citations omitted). Thus, under the Court's reasoning, until the local regulatory agencies have refused or denied a plaintiff's request for variances or amendments to the challenged zoning plan, that the courts cannot determine whether plaintiff will in fact be

precluded from obtaining economic benefit from the affected properties.

■ The second prong of the ripeness test established by the Court in *Williamson* is a requirement to "seek compensation through the procedures the state has provided for doing so." *Id.* at 194, 105 S.Ct. at 3120. As Justice Blackmun said:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking: all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking ... [I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson*, 473 U.S. at 194–95, 105 S.Ct. at 3120–21 (citations omitted). Thus, under the *Williamson* test, a taking claim will not be considered ripe for judicial review unless two conditions are met: first, that the claimants have requested from the applicable agency a final decision regarding the application of the challenged regulations to the property, and second, that the claimants have sought monetary compensation through the procedures provided by the state. *Id.* at 190–95, 105 S.Ct. at 3118–21.

■ Because this case involves a claim made under the Taking Clause in the context of zoning regulations, the ripeness requirements established in *Williamson* are controlling. Since the record shows that Quality Refrigerated has failed to meet either *Williamson* requirement, Quality Refrigerated's claim under the Taking Clause is premature and must be dismissed. First, concerning *Williamson's* final decision requirement, the record evidence does not show that Quality Refrigerated has obtained a final decision regarding how the zoning ordinance was specifically going to be applied to its property. Defendants contend, and Quality Refrigerated has not refuted, that Quality Refrigerated has never applied for variances from the zoning ordinance, even though such procedure is readily available.

■ Quality Refrigerated's failure to meet the first prong of Williamson's ripeness test would suffice to dismiss the complaint as premature under both the Taking Clause and the Due Process Clause. However, even were the court to assume that the finality requirement has been met here, Quality Refrigerated's failure to seek compensation through the procedures provided under Iowa law also renders its taking claim unripe.[9] Because Quality Refrigerated was required to seek compensation through the procedures provided under Iowa law before bringing this action in federal court, in having failed to do

9. Additionally, an independent basis for dismissing Quality Refrigerated's Taking Clause claim exists which was not raised by Defendants. The court concludes that Quality Refrigerated has failed to identify, plead, or prove a cause of action and thus a jurisdictional basis for its alleged Taking Clause claim. There simply is no direct cause of action arising under the Constitution itself against municipal officials for alleged constitutional violations. *See Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992) ("Plaintiff has no cause of action directly under the United States Constitution."), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). Rather courts have held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983. *Azul–Pacifico, Inc.*, 973 F.2d at 705 ("a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983"); *see also Ward v. Caulk*, 650 F.2d 1144, 1147–48 (9th Cir.1981); *Thomas v. Shipka*, 818 F.2d 496 (6th Cir.1987); *Hunt v. Robeson County Dept. of Social Serv.*, 816 F.2d 150 (4th Cir.1987); *Morris v. Metropolitan Area Transit Auth.*, 702 F.2d 1037 (D.C.Cir.1983). Section 1983 was available to Quality Refrigerated. Assuming that Quality Refrigerated intended to bring its Taking Clause claim under section 1983, that claim would be unripe. "Iowa recognizes a claim for inverse condemnation." *Bakken v. City of Council Bluffs*, 470 N.W.2d 34, 37 (Iowa 1991); *see Connolly v. Dallas County*, 465 N.W.2d 875, 878 (Iowa 1991); *Scott v. City of Sioux City*, 432 N.W.2d 144, 146–48 (Iowa 1988). As the Iowa Supreme Court pointed out in *Bakken*: "[The Plaintiff's] claim for a taking under section 1983 is not ripe for adjudication in this action until the remedy of inverse condemnation, or an equivalent state remedy, is first pursued." *Bakken*, 470 N.W.2d at 37 (citing *Williamson County*, 473 U.S. at 194–95, 105 S.Ct. at 3120–21).

so, this court is without jurisdiction to entertain its taking claim.[10]

In light of the reasoning set forth above, the court holds that Quality Refrigerated's federal action under the Taking Clause is premature. That being the case, Defendants' motion to dismiss is granted as to Count VII of the original complaint.

### E. Motion to Amend

Having concluded that diversity jurisdiction does not exist in this case, and that Count VII of the original complaint should be dismissed as unripe, the court lacks jurisdiction to consider this action. Because the court find that it lacks subject matter jurisdiction to hear this case, the question arises whether the court should simply dismiss the case, or instead should grant Quality Refrigerated's motion for leave to amend to cure deficiencies in subject matter jurisdiction.

At first blush, it would seem that common sense and logic dictate that if a court does not have subject matter jurisdiction over the complaint, it could not have subject matter jurisdiction even to allow amendment to the complaint, because lack of subject matter deprives the court of any power to hear the case or take any action in it. *Osborn*, 918 F.2d at 730 (subject matter jurisdiction is the court's very power to hear the case). Thus, it would appear that the only proper course upon a finding that the court lacks subject matter jurisdiction would seem to be to dismiss the complaint. Case law, however, is to the contrary. *Dale v. Weller*, 956 F.2d 813, 815 (8th Cir.1992); *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir.1987); *see also Leaf v. Supreme Court of State of Wis.*, 979 F.2d 589, 595 (7th Cir.1992) (" '[W]hile a court must dismiss a case over which it has no jurisdiction when a fatal defect appears, leave to amend defective allegations of sub-

ject matter jurisdiction should be freely given,' ") (quoting *Watkins v. Lujan*, 922 F.2d 261, 264 (5th Cir.1991)), *cert. denied*, —— U.S. ——, 113 S.Ct. 2417, 124 L.Ed.2d 639 (1993)). Therefore, at this juncture the court must determine whether to grant Quality Refrigerated's motion to amend the complaint to assert federal question jurisdiction based on a claim.

### 1. Standards for Motions to Amend

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." The spirit of the Federal Rules of Civil Procedure mandates that court decisions are to be based on the merits, and not on mere technicalities. *Foman v. Davis*, 371 U.S. 178, 181–82, 83 S.Ct. 227, 228–30, 9 L.Ed.2d 222 (1962). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)); *see McIndoo v. Burnett*, 494 F.2d 1311, 1313 (8th Cir.1974).[11]

The Supreme Court has stated that the granting of leave to amend is within the discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Federal courts have generally and consistently recognized that the rules governing the amendments of pleadings are to be construed liberally. *Standard Title Ins. Co. v. Roberts*, 349 F.2d 613, 622 (8th Cir. 1965). A district court, however, must take into account any prejudice which would result to others if leave were granted. *Zenith*,

---

10. Following the Supreme Court's decision in *Williamson*, the Iowa Supreme Court has held that "[u]nless a claimant exhausts available state remedies, a court is without jurisdiction to entertain a claim that the economic viability of the property has been substantially impaired by the zoning ordinance." *Iowa Coal Mining Co. v. Monroe County*, 494 N.W.2d 664, 672 (Iowa), *cert. denied*, —— U.S. ——, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993); *see Bakken*, 470 N.W.2d at 37 (applying *Williamson* exhaustion requirements).

11. "[T]he function of Rule 15(a) ... is to enable a party to assert matters that were overlooked or were unknown at the time he interposed the original complaint or answer.... Rule 15(a) therefore reinforces one of the basic policies of the federal rules—that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits." *See* 6 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1473 at 520–21 (2d ed. 1990).

401 U.S. at 330–31, 91 S.Ct. at 802–03. This prejudice "must be balanced against the hardship to the moving party if [leave to amend] is denied." *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir.1981).

■ In interpreting the liberal policy underlying motions to amend pursuant to Federal Rule of Civil Procedure 15(a), the United States Court of Appeals for the Eighth Circuit has stated:

> [u]nder this policy, only limited circumstances justify a district court's refusal to grant leave to amend pleadings; undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.... This court will review the district court's refusal to grant leave to amend under the abuse of discretion standard. *Norbeck v. Davenport Community School District*, 545 F.2d 63, 70 (8th Cir.1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977).

*Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987) (citation omitted); *see also Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.*, 958 F.2d 836, 839 (8th Cir.1992); *Standard Title*, 349 F.2d at 622. However, the policy favoring liberal allowance of amendment does not mean that the right to amend is absolute. *Thompson–El v. Jones*, 876 F.2d 66, 67 (8th Cir.1989). The Supreme Court has interpreted Rule 15(a) to mean that "absent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment—leave to amend should be granted." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962))[12] The court must consider the prejudice to the opponent, whether additional discovery would be required, and whether the court's docket would be adversely affected. *Elema–Schonander, Inc. v. K.C.F. Medical Supply*, 869 F.2d 1124 (8th Cir.1989).

■ Although the grant or denial of leave to amend is within the trial court's discretion, *Butler v. City of North Little Rock, Ark.*, 980 F.2d 501, 506 (8th Cir.1992), the trial court should state reasons for its denial of a motion to amend. *See Twin City Const. v. Turtle Mountain Indians*, 911 F.2d 137, 139 (8th Cir.1990) (refusal to state reasons for denial suggests abuse of discretion); *Thompson–El*, 876 F.2d at 67 n. 3 (trial court's failure to articulate its reasons for denying the motion is not *per se* an abuse of discretion but is not good policy).

### 2. *Futility of Amendment*

■ Defendants assert that Quality Refrigerated's proposed amendment should be denied as futile. Clearly, an amendment to a pleading can be successfully challenged on grounds of futility where the claims created by the amendment would be unable to withstand a motion to dismiss. *See Weimer v. Amen*, 870 F.2d 1400, 1407 (8th Cir.1989); *Holloway v. Dobbs*, 715 F.2d 390, 392–93 (8th Cir.1983); *Norbeck v. Davenport Community Sch. Dist.*, 545 F.2d 63 (8th Cir.1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *NDK Corp. v. Local 1550 of the United Food & Commercial Workers Int'l Union*, 709 F.2d 491, 493 (7th Cir.1983); *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir.1968); Byrne v. Kysar, 347 F.2d 734, 736–37 (7th Cir.1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed.2d 668 (1966); *Jeffers v. Convoy Co.*, 650 F.Supp. 315, 317 (D.Minn.1986); *Occhino v. Lannon*, 150 F.R.D. 613, 622 n. 8 (D.Minn.

---

12. Rule 15 reflects two of the most important policies of the Federal Rules of Civil Procedure. "First, the Rule's purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.... Rule 15 reflects the fact that the federal rules assign the pleadings the limited role of providing the parties with notice of the nature of the pleader's claim or defense and the transac-

tion, event, or occurrence that has been called into question; they no longer carry the burden of fact, revelation and issue formulation, which is now discharged by the discovery process, or control the trial phase of the action." *See* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1471 at 505–507.

1993). *But cf., Karl's Inc. v. Sunrise Computers, Inc.,* 901 F.2d 657, 660 (8th Cir.1990) ("colorable showing" sufficient to withstand application of clearly frivolous rule). Thus, before commending an analysis of the proposed amendment, the court will set out the appropriate standards for considering a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 3. Standard For Dismissal Pursuant To Rule 12(b)(6)

■ The Eighth Circuit Court of Appeals has long recognized that motions pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). The Rule provides that

[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

Fed.R.Civ.P. 12(b)(6).

■ The standards for dismissal under Rule 12(b)(6) were restated in *Carney v. Houston,* 33 F.3d 893 (8th Cir.1994):

We must construe the allegations in the complaint in the light most favorable to [plaintiff], *see [Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992) ], and should not approve dismissal of his complaint for failure to state a claim unless "it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, (1957).

*Carney,* 33 F.3d at 894. Thus, in considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982).

■ A motion to dismiss ordinarily requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b). However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b)(6); *see also Osborn v. United States,* 918 F.2d 724, 729 (8th Cir.1990) (distinguishing between standards for dismissal under Rule 12(b)(1) and Rule 12(b)(6), and stating that "Rule 12 requires that Rule 56 standards be applied to motions to dismiss for failure to state a claim under Rule 12(b)(6) when the court considers matters outside the pleadings."). With these standards in mind, the court turns to consideration of the proposed amendment.

### 4. The Viability of the Proposed Contract Clause Claim

The Contract Clause provides: "No state shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const., Art. 1, § 10. The Contract Clause is among those Constitutional provisions designed to address post-Revolutionary War state legislation purporting to repudiate obligations owed by local debtors to British and loyalist

creditors. A number of states had, in evident violation of article IV of the 1783 Treaty of Peace, 8 Stat. 80, 82, enacted laws staying the time for payment of debts, making paper money legal tender, and sequestering debts due British creditors. *See Home Bld. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 454–61, 54 S.Ct. 231, 246–48, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting); *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 204, 4 L.Ed. 529 (1819). Thus, article I, section 10 of the Constitution forbade the states from coining money, emitting bills of credit, making anything but gold and silver coin a tender for the payment of a debt, and "impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.[13]

Although the Contract Clause is phrased in absolute terms, the Supreme Court does not interpret the Contact Clause absolutely to prohibit the impairment of either government or private contracts. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 21, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977) ("Although the Contract Clause appears literally to proscribe 'any' impairment, this Court observed in *Blaisdell* that 'the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula.'") (quoting *Home Bldg.. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 54 S.Ct. 231, 236, 78 L.Ed. 413 (1934)); *see also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978) ("The language of the Contract Clause appears unambiguously absolute.... The Clause is not, however, the Draconian provision that its words might seem to imply."). Instead, the Court has formulated essentially a three-part analysis for harmonizing the command of the Clause with the "necessarily reserved" sovereign power of the states to provide for the welfare of their citizens.

*United States Trust Co.*, 431 U.S. at 21, 97 S.Ct. at 1517.[14]

First, as a threshold matter, it must be determined "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Spannaus*, 438 U.S. at 244, 98 S.Ct. at 2722; *see United States Trust Co.*, 431 U.S. at 17, 97 S.Ct. at 1515 ("[A]s a preliminary matter, appellant's claim requires a determination that the [law] has the effect of impairing a contractual obligation."); *see also Bannum, Inc. v. Town of Ashland*, 922 F.2d 197, 202 (4th Cir.1990) (legislation must constitute "a severe impairment of the [contractual] right"). Second, assuming there has been a substantial impairment of contract, the challenging party must demonstrate that legitimate governmental interests do not justify the impairment.[15] *See Spannaus*, 438 U.S. at 244, 98 S.Ct. at 2722. As Justice Stewart explained:

> [I]t is to be accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States. 'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common wealth, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' *Manigault v. Springs*, 199 U.S. 473, 480 [26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)]. As Mr. Justice Holmes succinctly put the matter in his opinion for the Court in *Hudson Water Co. v. McCar-*

---

**13.** Although the Contract Clause arose from the purported repudiation of contracts between private parties, the Supreme Court held in 1810 that the Contract Clause also prohibited a state's repudiation of its own contracts. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 137–39, 3 L.Ed. 162 (1810).

**14.** The Court has described the police power as "an exercise of the sovereign right of the Govern-

ment to protect the lives, health, morals, comfort and general welfare of the people, [which] is paramount to any rights under contracts between individuals." *Spannaus*, 438 U.S. at 241, 98 S.Ct. at 2721.

**15.** Defendants, in presenting their argument, only seriously address the third component of this inquiry.

*ter,* 209 U.S. 349, 357 [28 S.Ct. 529, 531, 52 L.Ed. 828 (1908)]: "'One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.'" *Id.* at 241–42, 98 S.Ct. at 2721. Finally, if such a legitimate public purpose is identified, "the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Energy Reserves Group v. Kansas Power & Light Co.,* 459 U.S. 400, 412, 103 S.Ct. 697, 705, 74 L.Ed.2d 569 (1983) (quoting *United States Trust Co.,* 431 U.S. at 22, 97 S.Ct. at 1518).

### a. Substantial Impairment

 Analyzing Defendants' alleged actions within this framework, the threshold inquiry is whether the Spencer zoning ordinance "has, in fact, operated as a substantial impairment of a contractual relationship." *Id.* at 244, 98 S.Ct. at 2722; *see Energy Reserves Group, Inc.,* 459 U.S. at 411, 103 S.Ct. at 704.

The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment.

*Energy Reserves Group, Inc.,* 459 U.S. at 411, 103 S.Ct. at 704 (citations omitted). Under this inquiry, the court must "identify the precise contractual right that has been impaired and the nature of the statutory impairment." *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 504, 107 S.Ct. 1232, 1251–52, 94 L.Ed.2d 472 (1987).

 Plaintiff cannot get past the first step because the zoning ordinance has not acted on the contract to adjust the rights and responsibilities of the parties. In order to have a constitutionally viable impairment, the law has to act on the contract itself, as distinguished from the subject matter of the contract. An otherwise valid law is not rendered unconstitutional merely because an object of regulation is also the subject of a contract. See *South Terminal Corp. v. Environmental Protection Agency,* 504 F.2d 646, 680 (1st Cir.1974). It is important to keep in mind that one must not confuse impairment of the performance of the agreement with impairment of the obligation of the contract. As one court has explained,

The contract clause of the federal constitution does not bar all governmental action affecting profitability of private contract, even where the effect of such action is to diminish the likelihood that one or more of the parties will keep their bargain. Rather, the clause forbids an alteration in the relative position of two parties to an existing contract.

*Metropolitan St. Louis Sewer Dist. v. Ruckelshaus,* 590 F.Supp. 385, 389 (E.D.Mo.1984); *see Jackson Sawmill Co. v. United States,* 580 F.2d 302, 311–12 (8th Cir.1978), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979); *see also South Terminal Corp.,* 504 F.2d at 679–80. In *Jackson Sawmill Co.,* 580 F.2d 302, the City of East St. Louis decided to build an expressway extension on the eastern approach to a bridge across the Mississippi River. To finance the extension the city executed a trust agreement with a St. Louis trust company providing for the issuance of bonds. Principal and interest on the bonds were to come wholly from the tolls and other bridge revenues. Later, St. Louis, the State of Missouri, and the federal government decided to construct another bridge. The bondholders sued claiming the diminution of the tolls caused by the presence of the competing second bridge impaired its contract. The Eighth Circuit held that the action in constructing a competing bridge may have been a breach of the bondholders' contract but was not an impairment in the constitutional sense. The court stated "no attempt was made to use the law, federal or state, to repudiate a contractual obligation. Assuming the obligation did exist, all defendants were open to a suit for breach of contract." *Id.* at 312. The mere

construction of a competing bridge did not preclude a remedy for damages and thus the contract had merely been breached; its obligation had not been impaired.

The zoning regulation in this matter did not alter the terms of the contract between Quality Refrigerated and the City of Spencer, but simply affected the uses which could be made of the Spencer Pack facilities. Thus, the zoning regulation's only effect is on the property which is the subject matter of the contract. Quality Refrigerated still has the contractual rights to develop the Spencer Pack, if it can get the necessary approvals; the City of Spencer still has the obligation to aid in the development; the financial arrangements between the parties remain unchanged. Indeed, the City of Spencer's actions may have made performance of the contract less profitable and less likely, but this gives rise only to an action between the parties for breach of contract—not a constitutional claim. Thus, the court concludes that Defendants have not substantially impaired an extant contract with Quality Refrigerated.

### b. Public Purpose

■■■ Although unnecessary given the court's finding that the zoning ordinance does not constitute a substantial impairment, the court will next address whether a "significant and legitimate public purpose behind the regulation" exists to justify it, "such as the remedying of a broad and general social or economic problem." *Energy Reserves,* 459 U.S. at 411–12, 103 S.Ct. at 704–05. "The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412, 103 S.Ct. at 705. The police power " 'is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.' " *Allied Structural Steel,* 438 U.S. at 241, 98 S.Ct. at 2721 (quoting

*Manigault v. Springs,* 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)).

An important consideration in those cases that have upheld the validity of legislation challenged under the contract clause is that the laws "did not prescribe a rule limited in effect to contractual obligations or remedies, but instead imposed a generally applicable rule of conduct designed to advance 'a broad societal interest'...." *Exxon,* 462 U.S. at 191, 103 S.Ct. at 2306 (citation omitted); *see also Ross v. City of Berkeley,* 655 F.Supp. 820, 832–33 (N.D.Cal.1987). The Court in *Exxon* distinguished the laws described above from those held invalid in *United States Trust Co.* and *Allied Structural Steel,* which " 'directly adjusted the rights and responsibilities of contracting parties.' " *Exxon,* 462 U.S. at 192, 103 S.Ct. at 2306. Here, Quality Refrigerated has not alleged in its proposed amendment that the purpose of the zoning ordinance was to adjust the balance of power between contracting parties. Thus, the court concludes that the zoning ordinance is based on a significant and legitimate public purpose such as a "broad and general social or economic problem" sufficient to justify the substantial impairment that its provisions have on Plaintiffs' agreements regarding the Spencer Pack facility.

The court, however, affording the requisite degree of deference to Defendants' zoning provision, concludes that the impairment was in exercise of the City's legitimate zoning powers and thus permissible under the Contract Clause. Here, Quality Refrigerated has not alleged why legitimate governmental interests in zoning provisions does not justify the impairment. Thus, because the amended complaint is silent on this point, the court concludes that Quality Refrigerated has not met its burden here.[16]

### IV. CONCLUSION

■■■ Having found that Quality Refrigerated is a citizen of Iowa, not Nebraska, the court concludes that complete diversity does not exist. Furthermore, having found no diversity of citizenship jurisdiction, unless

---

**16.** Having concluded that Quality Refrigerated has failed to plead either a substantial impairment to the agreement or that the zoning ordi-

nance does not serve a legitimate public purpose, analysis under the last step in Contract Clause analysis is therefore unnecessary.

some other basis for jurisdiction exists, this case must be dismissed. The court finds no other basis for jurisdiction. Quality Refrigerated's Taking Clause claim does not serve as the basis for federal question jurisdiction in this case because of its Taking Clause claim is not ripe for adjudication. First, the record does not show that Quality Refrigerated has obtained a final decision regarding how the zoning ordinance was specifically going to be applied to its property. Second, even were the court to assume that the finality requirement has been met here, Quality Refrigerated's failure to seek compensation through the procedures provided under Iowa law also renders its Taking Clause claim unripe. Third, the court concludes that Quality Refrigerated has failed to identify, plead, or prove a cause of action and thus a jurisdictional basis for its alleged Taking Clause claim because it has no cause of action directly under the United States Constitution. The court further finds that Quality Refrigerated's proposed amendment asserting a claim under the Contract Clause is denied as futile. First, as a threshold matter, it has not been demonstrated that the zoning ordinance has, in fact, operated as a substantial impairment of a contractual relationship. Second, assuming there has been a substantial impairment of a contract, Quality Refrigerated has not demonstrated that legitimate governmental interests do not justify the impairment. Thus, Quality Refrigerated's proposed amendment does not establish jurisdiction for this court to hear this case. Therefore, because diversity between the adverse parties does not exist in this case, and no other basis for subject matter jurisdiction exists, the court grants Defendants' Motion to Dismiss. This litigation is dismissed in its entirety.

**IT IS SO ORDERED.**